### BATTLE v. THE STATE.

1. The written request to charge was fully covered by the charge given.
2. The prompt condemnation by the court of the improper language
   used by the solicitor-general and the instruction to the jury that they
   should be controlled by the evidence only in trying the case, were
   sufficient to counteract any injurious effect to the defendant which
   such language may have tended to produce upon the minds of the
   jury.
3. There was no merit in the ground of the motion for a new trial based
   on the alleged newly discovered evidence.
4. The evidence demanded a verdict of guilty, the jury saw fit not to
   recommend imprisonment in the penitentiary for life, and there was
   no error in overruling the motion for a new trial.

Submitted November 7, — Decided November 16, 1898.

Indictment for murder. Before Judge Hart. Greene su-
perior court. August term, 1898.

*James Davison,* for plaintiff in error.

*J. M. Terrell, attorney-general,* and *H. G. Lewis, solicitor-general,* contra.

FISH, J.    Upon the trial of Reuben Battle, charged with the murder of James Davis, there was a verdict of guilty without a recommendation.    The testimony of the witnesses for the State was to the effect that Battle assassinated Davis.    When the State closed its evidence defendant's counsel announced that he would only contend that the defendant should be recommended to imprisonment for life.    The defendant in his statement admitted the assassination, and said he shot Davis because the latter had, several days prior to the homicide, cursed him and threatened to kill him, and he feared such threat would be carried into effect.    The grounds of the original motion for a new trial were, that the verdict was contrary to law and the evidence.

1.    The first ground of the amended motion was that the court erred in refusing to charge the following written request: " The law leaves with you in capital cases the discretion of fixing the punishment at imprisonment for life, or of fixing the death penalty.    This is a matter which is governed by no rule save your discretion.    If you fix the death penalty, or if you make it life imprisonment, in either event you have discharged your duty under your oath and under the law."    The court in its charge instructed the jury that " the punishment for the offense of murder is death, but it is within the discretion of the jury trying the case to recommend that the defendant be imprisoned in the penitentiary for life. . . If you believe from the evidence in this case that the defendant, Reuben Battle, assaulted the person alleged in the indictment, and if you believe that with malice aforethought he killed the deceased at the time and place and in the manner alleged in the indictment, it would be your duty to return a verdict of guilty, either with or without a recommendation to mercy, as you see proper."    And in instructing the jury as to the forms of the different verdicts, the court said, "or you can say, 'we, the jury, find the defendant guilty and recommend that he be imprisoned in the penitentiary for life'; and in that event your verdict would be the sentence of

the court." There are many rulings of this court to the effect that the court is not bound to charge in the exact language of a request, and that a new trial will not be granted for refusing to charge as requested, when the charge given substantially covers. the request. *Long* v. *State*, 12 *Ga.* 294; *Tolleson* v. *State*, 97 *Ga.* 352; *Keener* v. *State*, 97 *Ga.* 388. See a number of civil cases cited under section 5479, page 1667 of the Civil Code. The charge given in the case under consideration was clear and accurate as to the jury's discretion to recommend that the defendant be punished by imprisonment in the penitentiary for life, in the event they should find him guilty of murder. The court expressly instructed them that the recommendation was in their discretion, that they could make it if they saw proper, and gave the form of the verdict containing a recommendation, and told them if they returned such a verdict the sentence of the court would be in accordance therewith. The request was fully covered by the charge.

2. In the second ground of the amended motion for a new trial, complaint is made that the solicitor-general, in his argument to the jury, said, " You must do it. The time has come in the history of the county when it is demanded"; meaning that the jury should find the defendant guilty without a recommendation of life imprisonment in the penitentiary. As to this ground, the court certifies as follows: " The solicitor used the language as stated, and counsel for defendant immediately complained thereat and asked me to charge the jury not to be controlled by the appeal of counsel, and I immediately told the jury that the language of the solicitor was improper, and in trying this case they would be controlled only by the evidence." We are of the opinion that this prompt condemnation by the court of the improper language of the solicitor-general, and the instruction to the jury that they should be controlled only by the evidence in trying the case, were sufficient to have counteracted any injurious effect to the defendant which such language may have tended to produce upon the minds of the jury. There was no motion for a mistrial. *Hudson* v. *State*, 101 *Ga.* 520.

3. The third and last ground of the amended motion for a new trial was based upon alleged newly discovered evidence.

The affidavits of four persons were submitted to sustain this ground. Chas. J. Doherty deposed that, "I have known the boy [Reuben Battle] since he was very young and have had ample opportunity to know his mental condition. Said defendant is stupid and idiotic, and from my knowledge of his mental condition, as above shown, to wit, his stupid and idiotic demeanor, I regard him as being an idiot and of unsound mind. I believe Reuben Battle was an idiot and of unsound mind on the 12th day of April, 1898," the date of the homicide. L. H. Branch deposed that, "I know the defendant, Reuben Battle, who is charged with murder. His sister has been in my employ for some time, and I had opportunity for observing the boy while he was at his sister's house, where he spent a good portion of his time. Said Battle is stupid and idiotic, and from my knowledge of his mental condition, to wit, his being stupid and idiotic, I consider him simple-minded." Mrs. H. M. Robertson deposed that, "I know Reuben Battle. . . A few years ago said Battle was employed by me as a general help in conducting a family grocery-store of which I am proprietress. On account of his employment by me I had ample opportunity to know his mental condition. Said Battle had just mind enough to obey an order, without having sense enough to know the consequence of the act; and if he had been ordered by me to kill some one he would have obeyed. While in my employment said Battle once went out on the street and began to hollo, without any cause, at the top of his voice, and no one could prevail on him to stop. From my knowledge of said Battle's mental condition, formed by his actions as above set forth, as well as by his entire manner and mental condition while in my employ, I believe him to be an idiot, and consequently of unsound mind." John E. Barnhart deposed that, "I am marshal of the city of Greensboro. I know the defendant, Reuben Battle, who is charged in this case with murder. Said defendant has spent a great portion of his life around Greensboro, and in my position as marshal I have had cause to observe the defendant and form a knowledge of his characteristics. Said Reuben Battle is stupid and idiotic, and from my knowledge of his mental condition, because of his stupidity and idiocy, I consider him simple-minded." G. A. Mer-

ritt, an attorney at law, James H. McWhorter, the ordinary
of Greene county, made affidavit as to the credibility of the four
above-named affiants.  The defendant himself made affidavit
that he did not know of the existence of this evidence until after
verdict, and that it could not have been discovered by ordinary
diligence; that because of his poverty he was unable to employ
counsel to represent him, and that after counsel had been pro-
vided for him he did all in his power or knowledge to aid his
counsel in the preparation of the case for trial, and informed
him of the existence of all testimony that, so far as defendant
knew, would likely be of benefit in the case.  Defendant's coun-
sel made affidavit that he did not know of the newly discovered
evidence until after verdict, and that it could not have been dis-
covered by ordinary diligence; that he was employed in the case
only four days prior to the trial, by defendant's half-sister; that
deponent used ordinary diligence to discover all testimony of
witnesses who would swear to any relevant or material fact of
benefit to defendant, and that "while said Battle showed no in-
terest in his case, appeared utterly unaware of his situation, and
gave other evidences of his condition, deponent could not by the
exercise of ordinary diligence discover before said trial any
creditable witness by whom he could prove said mental condi-
tion; nor did deponent have any reason to believe that he would
or could be able to discover such evidence or witnesses by the
next court, so as to authorize him to move for a continuance."
As a counter-showing, there was submitted for the State the
joint affidavit of ten persons, who deposed as follows: "They
are acquainted with Reuben Battle convicted of murder at the
last term of Greene superior court, and have known him for sev-
eral years.  Affiants say that said Reuben Battle is a negro of
ordinary intelligence, knows the difference between right and
wrong, and is responsible for his acts.  Affiants never had any
intimation before that said Reuben Battle was at all idiotic,
and never saw or heard of anything indicating that he was not
of sound mind."  So far as the record shows, these affidavits as to
mental condition of the defendant were submitted to and consid-
ered by the court without objection.  Only one of them,—that
of Doherty, referred to the defendant's mental condition at the

time of the homicide. None of the affiants appear to havè been experts, yet they gave no facts upon which they based their opinions, except Mrs. Robertson; and the only fact stated by her for believing defendant to be an idiot was, that while in her employ, as general help in her store, he, on one occasion and without cause, holloed at the top of his voice, on the street, and no one could prevail on him to stop. The bare opinions of the affiants, unaccompanied by any facts, doubtless had little weight with the court. Even if the defendant was stupid, simple-minded, or of unsound mind at the time of the homicide, he was criminally responsible if he then had reason sufficient to distinguish between right and wrong in relation to the particular act he was about to commit, unless he committed such act in consequence of and in connection with some delusion which overmastered his will, so that he had no criminal intent. See *Graham* v. *State,* 102 *Ga.* 650, where the prior rulings of this court upon the subject are cited. If the defendant was an idiot at the time of the homicide, of course he could not be held criminally responsible. Penal Code, § 36. An idiot is one "who hath had no understanding from his nativity." 1 Blackst. Comm. 304. He is a natural fool, or fool from birth. It is not probable that the persons who made the affidavits in behalf of the defendant intended to swear that he was an idiot in the real sense of the term. The circumstances of the homicide, the defendant's statement, his manner and appearance at the trial, his affidavit presented upon the motion, the fact that the trial was had in the town of Greensboro, where defendant had spent a great portion of his life and where the counsel employed by his half-sister resided, and the fact that all the witnesses who testified for the State knew the defendant, one of them having been his companion and bed-fellow, and, so far as the record shows, no one giving the least intimation of his mental condition, before the verdict, were all matters which the court doubtless took into consideration, in connection with the weakness of the evidence submitted for defendant, in reaching the conclusion that there was no merit in this last ground of the motion for a new trial.

4. The evidence, if not defendant's statement itself, demanded a verdict of guilty of murder, the jury, in their discretion, saw

fit not to recommend punishment by life imprisonment in the penitentiary, and there was no error in overruling the motion for a new trial.

*Judgment affirmed.    All the Justices concurring, except Simmons, C. J., and Lumpkin, P. J., absent.*