YOUNGBLOOD *v.* THORN.

Opinion delivered October 25, 1920.

1. SCHOOLS AND SCHOOL DISTRICTS—PETITION FOR DISSOLUTION—CAPACITY OF SIGNER.—Where there was a conflict in the evidence as to. whether a signer of a petition for dissolution of a school district was an idiot or insane person, a finding that he was a qualified elector and therefore qualified to sign such petition will be sustained on appeal.

2. SCHOOLS AND SCHOOL DISTRICTS—DISTRIBUTION OF TERRITORY OF DISSOLVED DISTRICT.—Under Kirby's Digest, § 7548, the county court in the first instance, and the circuit court on appeal, has a discretion in the matter of distributing the territory of a dissolved district, which discretion is to be exercised to the best interests of the citizens of the district to be affected.

3. SCHOOLS AND SCHOOL DISTRICTS—DISTRIBUTION OF TERRITORY OF DISSOLVED DISTRICT.—Refusal of the circuit court to attach the territory of a dissolved district to certain other districts, as prayed, was not an abuse of discretion where there was no testimony tending to prove that the order of the court attaching the territory of the dissolved district to other districts was detrimental to the best interests of the inhabitants and patrons of the school of the districts affected.

Appeal from Carroll Circuit Court, Eastern District; *J. S. Maples,* Judge; affirmed.

*C. A. Fuller,* for appellants.

1.   Elza Thorn was not a qualified elector. Kirby's Digest, §§ 7589, 2768; 97 Ark. 440; 15 *Id.* 555; 29 Am.

Dec. 33; 4 Words and Phrases, 3381; 36 W. Va. 563. He was at least *non compos mentis*.

2. The court erred in its order assigning or attaching the territory. 119 Ark. 593. The county court had the power and authority to assign the territory as its judgment and discretion dictated. The judgment is contrary to the law and evidence.

*Festus O. Butt,* for appellees.

1. The court had no power to dissolve the district other than in the manner prayed for in the original petition.

2. The dissolution was illegal because it might require some pupils to travel more than two and a half miles to school; and,

3. The petition was not signed by a majority of the electors of the district. These are the only grounds for reversal and none of them are tenable. 40 Ark. 290; 51 *Id.* 159. Elza Thorn was a qualified elector. 97 Ark. 220. The court acted in accordance with the law and evidence, and its finding and judgment should not be disturbed.

WOOD, J. Section 7548 of Kirby's Digest is as follows: "The county courts of this State shall have power to dissolve any school district now established or which may hereafter be established in its county, and attach the territory thereof in whole or in part to an adjoining district or districts, whenever a majority of the electors residing in such district shall petition the court so to do." The appellees, who constituted a majority of the electors residing in School District No. 93, petitioned the county court of Carroll County to dissolve that district and upon dissolution thereof to attach a portion of its territory (describing the portion) to the Green Forest Special School District, and the remaining portion (describing the same) to School District No. 54. The county court, after hearing the evidence, granted the petition for dissolution, and the appellants, who were remonstrants to the petition, appealed to the circuit

court. The circuit court likewise granted the prayer of the petition for a dissolution of district No. 93, but did not attach the territory comprising such district to the other districts as prayed in appellee's petition. The facts are substantially as follows:

The appellees constituted a majority of the electors of district No. 93, prvided J. E. or Elzy Thorn was a qualified elector of that district. The appellants contend that he was not such an elector, and on that issue they adduced substantially the following testimony:

Dr. C. A. George, a practicing physician in Carroll County, testified that he was the medical examiner for the draft board during the World War, and that J. R. Thorn, father of Elzy, claimed that the latter was exempt "on the ground of very weak mentality—imbecile;" that he was an idiot and wholly unaccountable for his actions. The witness exempted him on the ground of his general appearance and physical makeup. He had a peculiar shaped head and face. His eyes were very close together. He was void of intellect, and did not have sense enough to obey orders quickly. Witness considered him an imbecile. He had a mind that could possibly be compared with the mind of a four or five year old child. From what he said and the statement of his father and other people, he did not have much judgment. Witness' examination of Elzy consisted in observing him and conversing with him and asking him questions.

J. R. Thorn testified that his son could not read or write; that he was about twenty-seven years of age; that he had other children grown who could read and write; that he got a poll tax receipt for his son, Elzy, who paid for it. The father was interested in getting the receipt on account of the present contest. There was a subpoena issued for his son in order to have him in court to testify, but he did not know where his son was. Witness knew that the subpoena was issued for his son to have him testify in the county court in this case, but he had not been located. Witness knew that the issue in the contest was whether or not his son was competent to

sign the petition. Witness told the sheriff when he came to subpoena his son, Elzy, that he would have to look him up; that as far as witness knew he was not going to court; that he hid out during the county court and likewise on this occasion. Witness was not hiding him out to keep him from appearing before the court and testifying and showing his intellect. His son told witness to sign the petition for him, but witness did not do so. Some one else signed for him.

On cross-examination he testified that his son, Elzy, had transacted any business that he wanted to in any way; that he made trades when he wanted to and worked for other people. He votes in elections. At one time he was challenged by one of the judges, but the other two judges allowed him to vote. Elzy had a bank account, but witness did not know whether the certificates of deposit were made before this controversy or not. This was the third time that the matter had been in court.

Another witness testified that he was a school director and had known Elzy Thorn all of his life; that he had lived close to him and knew that he could not read or write. In the opinion of witness, he was not able to look after business in an intelligent manner or school affairs, or anything like a qualified voter; that he could not count money; that he had the understanding of a child about six years of age and lots of them that age knew more than Elzy. This witness stated that he was judge or clerk of the recent election when Elzy Thorn voted, and witness did not challenge his vote for the reason that he was living close to him and did not want to bring up the question, but witness knew that it was his duty to challenge the vote. He further stated that Elzy had worked for him in the past; that he always paid him his wages—paid him all he owed him.

Other witnesses testified substantially to the same effect, stating that Elzy Thorn had a head shaped different from any one else; that he was not bright; that he was generally considered in the neighborhood men-

tally deficient, weak minded, and a simpleton. One of the witnesses, who was a road overseer of the district where Elzy resided, said that he did not work Elzy Thorn on the road because witness thought he was not mentally right, and besides he did not look to be very strong of body.

On behalf of the appellees one witness testified that he was a director of the Green Forest School District, and had known Elzy Thorn about twenty years. Elzy had participated in different elections at Green Forest and was never challenged. Witness had seen him buy cigars, candy, and other little things, and he was able to make his own way around the country, and that nobody acted as guard for him. When witness was acting as judge of the election, he thought that Elzy Thorn was qualified to vote. Witness did not know whether Elzy Thorn was an idiot or not; had never examined him, but only supposed that he was a simpleton because he did not go to school. He did not know whether or not he could conduct a sensible conversation.

Another witness, who was a merchant at Green Forest, and also a director of the Green Forest School District, testified that he knew Elzy Thorn; that he had in the past traded at his store and did not have to have a guardian with him when he purchased; that he paid when he had the money, and when he didn't have the money he was given credit; that seven or eight dollars was the most he ever got on credit; he did not let his account run long.

The trial court found that J. E. or Elzy Thorn was a qualified elector and further found that it was to the best interest of district No. 93 and its patrons to dissolve the district. The court entered a judgment dissolving the district and attaching the territory to other districts as above stated, and apportioning its revenues to those districts.

Two questions are presented by this appeal. First, did the court err in holding that Elzy Thorn was a qualified elector? Second, did the court err in not attaching

the territory in District No. 93 to other school districts as prayed in the appellees' petition? We have a statute which prescribes that "no idiot or insane person shall be entitled to the privileges of an elector." The statute further provides "that whenever any person shall present himself to vote, and there shall be no specific evidence prescribed by law as being necessary to establish his qualifications, the judges of election may interrogate him under oath, touching his qualifications as an elector, or they may satisfy themselves in relation thereto by any legal testimony." Section 2768, Kirby's Digest.

There was testimony tending to prove that Elzy Thorn had voted several times at elections, and that his qualifications as an elector had not been challenged by the judges of the election themselves, or any one else. We are of the opinion, and a decided preponderance of the evidence shows, that Elzy Thorn has a very low mentality, but that is not the test. The test is whether or not he is an idiot or insane, and it can not be said that the undisputed evidence shows that Elzy Thorn is an idiot or insane person in the sense of the above statute. It therefore follows, as a conclusion of law, that he was a qualified elector. The question before us on appeal is not whether a preponderance of the evidence shows Elzy Thorn to be a mental imbecile in the sense of the above statute, but whether there was any evidence of a substantial character to warrant the finding of the trial court that he was not an idiot, or insane person. There was evidence under this rule to sustain the court's finding.

The next question, as to the distribution of the territory of district No. 93 after the order dissolving such district, is one purely of law. Under the above statute, "the county court in the first instance and the circuit court on appeal has a discretion in the matter which is to be exercised to the best interests of the citizens of the district to be affected. *Hughes* v. *Special School District No. H of Haynes,* 135 Ark. 454.

It can not be said that the court abused its discretion in refusing to attach the territory as prayed in the appellees' petition. There is no testimony tending to prove that the order of the court attaching the territory of the dissolved district to other districts was detrimental to the best interests of the inhabitants and patrons of the school of the districts affected. There is no reversible error, and the judgment must therefore be affirmed.