## 11912.  PHILLIPS v. THE STATE.

1. In a trial under an indictment for murder, where the testimony tends to show the offense of murder as alleged in the bill of indictment, and the defendant's statement at the trial tends as a whole to show that the homicide was justifiable, yet where, by ·accepting as true parts only of the testimony· and parts only of the defendant's statement, or by considering the testimony and the statement conjointly, the jury may be authorized to find as true a set of facts constituting the offense of voluntary manslaughter, the court does not err in giving in charge to the jury the law applicable to all three of the grades of homicide thus brought into question. *Maughon* v. *State*, 9 *Ga. App.* 559 (4), 569 (71 S. E. 922); *Brown* v. *State*, 10 *Ga. App.* 50 (1) (72 S. E. 537).

(a) Applying this principle to the facts of this case, this court cannot say, as a matter of law, that the instructions in the charge of the trial judge on voluntary manslaughter were inappropriate, or that the verdict finding the accused guilty of that offense was without evidence to support it.

2. In the trial of such a case, evidence as to threats made by the accused against the decedent prior to the fatal encounter is admissible, either as evidence in chief to show malice or as strict matter of rebuttal to contradict that ·part of the defendant's statement wherein he denies malice. See Park's Penal Code, § 61, with annotations on "Threats," and § 1036, with annotations under the catchword "Contradict." But regardless of technical niceties as to what evidence should be offered in chief and what may be offered in rebuttal, this court will not reverse a trial court for admitting in evidence at any stage of the trial any testimony· that is both relevant and competent. *Thomasson* v. *State*, 22 *Ga.* 504; *McKinne* v. *State*, 81 *Ga.* 164 (3) (9 S. E. 1091) In view of these principles and of the further fact that the jury in the instant case found the accused guilty of voluntary manslaughter, and, therefore, that the killing was without malice, his contention that he should have a new trial because such evidence was admitted as matter of rebuttal, over his objection that it should have been offered in

chief, is without semblance of merit. *Carter* v.. *State*, 2 *Ga. App.* 254 (1) (58 S. E. 532); *Cobb* v. *State*, 11 *Ga. App.* 52, 53 (6) (74 S. E. 702).

3. The charge of the court that "A reasonable doubt is the reverse of a reasonable and moral certainty" was inaccurate; but when considered in connection with the entire charge, or even with the entire definition of the phrase "reasonable doubt" as given in charge to the jury, it appears that this inaccuracy could not reasonably have prejudiced any right of the accused.

4. The charge that a presumption of malice arises upon proof of an intentional homicide, unless other facts appear to negative such presumption, was applicable to the offense of murder only; and the accused having been convicted only of voluntary manslaughter, this charge affords him no cause for a new trial, even if the charge might otherwise have been erroneous for any reason. *Cobb* v. *State*, 11 *Ga. App.* 53 (6) (74 S. E. 702); *Williams* v. *State*, 12 *Ga. App.* 337 (1) (77 S. E. 189).

5. The charge of the court on apparent necessity to kill is not subject to the criticism that it restricted the jury·to the consideration of a real necessity.

6. After correctly instructing the jury as to the weight to be given evidence of good character, the court did not err in further charging them as follows: "If, however, the other proof in the case — [proof] other [than] that of good character — leaves no reasonable doubt in the mind of the jury as to the defendant's guilt, and if the proof of good character leaves no reasonable doubt as to the guilt of the defendant when considered in connection with the other evidence, it would be the duty of the jury to convict the defendant, notwithstanding the proof of good character. See Park's Penal Code, § 1013, with annotations on "Character," and § 1019, with annotations on "Charge."

7. The defendant requested the court to charge as follows: "Good character alone, when established, may generate in the minds of the jury a reasonable doubt and produce an acquittal." The court refused to adopt the language of the request, but, in lieu thereof, charged the jury as follows: "I charge you that good character is a substantive fact in the case, to be considered along with the other facts in the case; and even if the other facts in the case may not leave a reasonable doubt in the minds of the jury as to the guilt of the defendant, still if the good character that is established, or may be, in the minds of the jury, has the effect to raise a reasonable doubt in the minds of the jury as to his guilt, it would be the duty of the jury to give him the benefit of the doubt and acquit him." *Held*, in view of the charge given, the court did not err in refusing to adopt the exact language of the request.

DECIDED JANUARY 28, 1921.

Conviction of manslaughter; from Bibb superior court — Judge Mathews. September 9, 1920.

See same case 149 *Ga.* 255 (99 S. E. 874).

*W. A. McClellan, T. J. Cochran, T. A. Jacobs Jr.,* for plaintiff in error.

*Charles H. Garrett, solicitor-general,* contra.

LUKE, J. The plaintiff in error, John Q. Phillips, was indicted for the murder of Walter A. Fendt, and upon his trial was convicted of voluntary manslaughter. There are several grounds on which he strenuously claims the right to a new trial, some on account of the evidence, some on account of the charge of the court, and all based on the contention that he should have been convicted of murder or nothing. Other grounds of error, as indicated by the headnotes, are based on different contentions.

From the evidence in the case, it appears that Phillips and Fendt were next-door neighbors residing on Jeff Davis Street in the City of Macon, but that, for several months preceding the homicide, the state of feeling which each entertained toward the other had been anything but good. Fendt had threatened to whip Phillips, and Phillips had threatened to kill Fendt. It further appears that this dislike of the men extended to their respective wives; that is to say, Mrs. Phillips entertained a strong dislike for Mrs. Fendt, and Mrs. Fendt was equally strong in her dislike for Mrs. Phillips. Neither family was willing for the chickens of the other to go upon their premises. At one time a single fence had separated the yard of one from the other; but shortly before the homicide Fendt had started and almost completed an additional fence, which was supposed to be chicken proof, parallel to and within a few inches of the old fence, but wholly upon his own lot. It was while at work upon this fence, after his usual day's work, on May 4, 1918, that Fendt was shot and killed by Phillips. As to the shooting Mrs. Fendt is the only eye-witness whose testimony was offered and admitted. According to her testimony, Mr. Fendt went into the alley to repair the fence, and was in the act of removing therefrom certain obstructions when Mrs. Phillips appeared in her back yard and said, " I dare you to move those things, " at the same time throwing a brick at Fendt. He moved, stooped down the second time, and then rose up saying, " Mrs. Phillips, don't throw at me any more. " He stooped down again, and· when he arose Mr. Phillips laid the gun through the crack of the fence and shot him. Fendt made no assault upon either Phillips or his wife, made no gesture at either of them, spoke no word to either of them except to request Mrs. Phillips not to throw at him again as above stated. The shot fired by Phillips killed Fendt almost instantly, and he

fell where he was shot, upon the hammer he had been using to repair the fence.

The defendant, however, in his statement to the court and jury, gave an entirely different version of the main transaction. He said that, upon returning home from his day's work, he went into the kitchen with his wife, where he remained, until she, discovering the Fendts in the alley between the two fences, went out to investigate. Continuing, he said: "I didn't pay any attention until I heard Mr. Fendt say, 'I will kill you, you damn bitch,' and I looked and saw him throw a brick, or part of it, and he struck at her with the hammer, in that fashion, and I jumped up and went out there. . . As I went I came across my boy's rifle at the back door, and, in my excitement, I would have taken a broom just as readily. . . Just as I reached Mrs. Phillips' side, Mr. Fendt raised his hammer in this fashion, as if to throw at Mrs. Phillips, and I fired one shot. . . I felt, and I feel like yet, it was my moral duty to protect my wife " Several witnesses who appeared upon the scene immediately after the shooting testified that Fendt was found lying upon a hammer at the spot indicated both by the testimony of Mrs. Fendt and by the statement of the defendant. A number of witnesses testified to the previous good character of the defendant, and their testimony was uncontradicted.

It is true, as contended by counsel for the plaintiff in error, that the sworn evidence in the case shows no offense but murder. It is also true, as contended by them, that the defendant's statement, taken in its entirety, shows that the homicide was justifiable. But it was for the jury alone to determine what part of the defendant's statement they would accept as true and what part of it they would reject; they had the right to believe any one part of it and to disbelieve any other part of it. Penal Code (1910) § 1036; *Jones* v. *State,* 65 *Ga.* 506(3), and *Woods* v. *State,* 10 *Ga. App.* 476 (3) (73 S. E. 608). By accepting so much thereof as tended to negative the allegation of malice and show a killing which was the result of passion, engendered by an actual assault on the part of the decedent upon the wife of the accused, a basis for the theory of voluntary manslaughter was found. Penal Code (1910), § § 65, 74, 75. By the same process of reasoning the theory of murder was excluded; for without

malice there can be no murder. Penal Code (1910), § 60. And, further, by rejecting so much of the defendant's statement as tended to show any real or apparent necessity for the alleged killing, in order to prevent a felony from being committed on his wife, all basis for the theory of justifiable homicide is excluded. Penal Code (1910), § § 70, 74, 75. That theory of the facts would make voluntary manslaughter not only a proper finding by the jury, but the only proper finding in the case. But was that theory of the case reasonably deducible from the facts? We think it was. Each side contended that a brick was thrown; each side contended that the other threw it. The issue was for the jury to determine. As to that issue it may well be said that they found with the defendant. If there was any question as to whether such brick throwing constituted a bare assault or an assault with intent to murder, that question too was one for the jury; and, in order to uphold the verdict, it may well be said that, as to this question, their finding was in favor of the State, being to the effect that the decedent committed only a bare assault upon the defendant's wife, sufficient to justify the excitement of passion on the part of the accused but not sufficient to justify him in killing the man who threw the brick. That assault, whether felony or misdemeanor, being a thing of the past before the defendant seized his gun and joined in the controversy, can of itself alone afford no basis for the doctrine of reasonable fears, which, to avail the defendant, must be urgent and pressing at the time of the killing. Penal Code (1910), § § 73, 74, and 75.

From what has been said, it is plain that the brick throwing alone affords a sufficient basis for the theory of voluntary manslaughter. As for the further assault which the defendant claims was made upon his wife by the decedent, to the effect that the decedent had a hammer drawn and was in the act of throwing it at her at the time of the shooting, it is sufficient for present purposes to say that, as to this matter, the finding of the jury was in favor of the State's contentions; that is to say, they found that the alleged assault with a hammer was neither made nor attempted to be made. At least, the jury had the right so to find; and this court, therefore, has no choice but to accept that theory or some other legitimate theory that tends to uphold the verdict. Moreover, the assault with the hammer, if it was made as claim-

ed by the defendant, varies, as a matter of law, from the assault with the brick in so far only as the doctrine of reasonable fears is concerned; and even that question was one for the jury, requiring them to determine, not whether the killing was murder or was justifiable, but whether it was voluntary manslaughter or justifiable homicide.

From what is above said it clearly follows that the ruling announced in the first headnote is applicable to the facts of this case, that the court did not err in giving in charge to the jury the law of voluntary manslaughter, and that the verdict for that grade of homicide was not unauthorized. And this is true notwithstanding the judge was not required in the absence of a timely written request, to charge on that theory of homicide.

The defendant requested the court to charge as follows: " Good character alone, when established, may generate in the minds of the jury a reasonable doubt and produce an acquittal." The court refused to adopt the language of the request, but, in lieu thereof, charged the jury as follows: " I charge you that good character is a substantive fact in the case, to be considered along with the other facts in the case; and even if the other facts in the case may not leave a reasonable doubt in the minds of the jury as to the guilt of the defendant, still if the good character that is established, or may be, in the minds of the jury, has the effect to raise a reasonable doubt in the minds of the jury as to his guilt, it would be the duty of the jury to give him the benefit of the doubt and acquit him." In view of the charge given, the court did not err in refusing to adopt the exact language of the request. *Battle* v. *State,* 105 *Ga.* 703 (1), 705 (32 S. E. 160); *Mixon* v. *State,* 7 *Ga. App.* 805 (7) (32 S. E. 160). See also *Hill* v. *State,* 18 *Ga. App.* 259 (68 S. E. 315).

The other grounds of error are sufficiently dealt with in the headnotes.

*Judgment affirmed. Broyles, C. J., and Bloodworth, J., concur.*