Mr. W.F. Elsken, Jr., Chairman Logan County Election Commission P.O. Box 167 Paris, Arkansas 72855
Dear Mr. Elsken:
This is in response to your request for an opinion on three questions concerning the qualifications of voters. Specifically, your three questions are as follows:
1. What constitutes a legally qualified voter?
 2. Is there any instance where a mentally handicapped person is so strongly mentally handicapped that they would not be considered as a legally qualified voter?
 3. If a person is not legally qualified, what officials can make this determination?
You indicate that your questions arise because in Logan County there is a state Human Development Center for the mentally handicapped, and that patients of this center are registered and voting. There is some question, however, as to whether these patients are exercising their judgment in voting, or whether they are being overly influenced by some other person with regard to casting their votes.
In response to your first question, there is no express definition of a "qualified voter" under Arkansas law. Section7-1-101(9) (Cum. Supp. 1992) of the Arkansas Code defines a "qualified elector" as "a person who holds the qualifications of an elector and who is registered pursuant to Arkansas Constitution, Amendment 51." This statute, of course, begs the question of what qualifications are necessary. Similarly, A.C.A.7-5-201 provides that in order to be qualified to vote, a person "shall have registered at least twenty (20) calendar days immediately prior to the election and in the manner set forth by the Arkansas Constitution, Amendment 51." Again, this statute does not set out the substantive qualifications of an elector.
The information needed to determine the qualifications of an elector is found in the United States and Arkansas Constitutions. Article III of the Arkansas Constitution of 1874 enumerates the qualifications for an elector in Arkansas.
This Article has been superseded, in some respects, by Amendment26 to the United States Constitution and Amendments 8, 36, 39 and 51 to the Arkansas Constitution. Amendment 51 to our Constitution provides that all persons may register to vote who "are qualified electors and who have not previously registered." Amendment 51, 9(a)(1). Again, however, the law does not expressly set out the necessary qualifications. This information must be drawn from various provisions of law in the United States and Arkansas Constitutions, and by negative inference from language in Amendment 51 concerning cancellation of registration.
Construing all these amendments together, it may be concluded that in order to be eligible to vote in Arkansas,[1] a person must be 1) eighteen years of age, 2) a United States citizen, 3) eligible and registered pursuant to Amendment 51 to the Arkansas Constitution, 4) not a convicted felon who has not been pardoned or discharged his sentence, and 5) not an "idiot or insane person" under Article III, 5.
It is this final qualification which is germane to your second question. Article III, 5 provides that: "No idiot or insane person shall be entitled to the privileges of an elector." This antiquated, functionally outmoded, and derogatory provision appears to have been unaffected by the enactment of Amendment 51. The latter amendment does not address qualification based upon mental competency. There is only one Arkansas case which interprets this provision. It is summarized at 80 ALR 3rd 1116, 1127, as follows:
 In Youngblood v. Thorn, (1920) 145 Ark. 466, 224 S.W. 962, where a petition by a majority of the electors residing in a school district to dissolve that district was challenged on the grounds that the majority vote was a result of including an unqualified voter, the court affirmed the lower court finding that the voter in question was not an idiot or insane person disqualifying him from voting under an applicable statute. The testimony at the trial level revealed that the elector in question was generally regarded by the community as mentally deficient, being unable to read or write and having the mind of a 4- to 6-year old child, but also that he had voted in previous elections, had a bank account, and had transacted business without the aid of a guardian. The court was of the opinion that although a decided preponderance of the evidence showed that the elector in question had a very low mentality, the test was whether or not he was an idiot or insane person, and it could not be said that the evidence showed idiocy or insanity as these terms were used in the applicable statute. . . .
80 ALR 3rd at 1127.
Unfortunately, this is the only case which provides any guidance as to what type of mental disability would disqualify a voter in Arkansas as being an "idiot or insane person." The annotation cited above notes the difficulty of construing such vague, antiquated terms. 80 ALR 3rd at 1119. Another Arkansas case, however, Giles v. State, 261 Ark. 413, 549 S.W.2d 479 (1977), in another context, defines the word "idiot" as implying "an absence of intellectual or reasoning powers. . . ."261 Ark. at 423.[2] Webster's Seventh New Collegiate Dictionary (1973) defines the term deficiency. While the word `idiot' implies an absence of intellectual or reasoning powers, `imbecile' implies great mental feebleness. An imbecile is commonly incapable of earning a living. A moron is a moderately feebleminded person with a potential mental age of eight to twelve years. Most morons are capable of doing routine work under supervision, and can be happy with tasks too simple and monotonous to satisfy an intelligent person. Moronity is the milder degree of mental deficiency. . . . Id. at 423.
The term "insane person" on the other hand, was a broader term which encompassed both "idiots" and "lunatics," the former being persons without understanding from birth, and the latter once having been of sound mind, but who have lost their reason, with lucid intervals. See Hiett, supra, and De Nardo v. De Nardo,293 N.Y. 550, 59 N.E.2d 241 (1944). "Insane persons" are generally incapable of understanding or carrying on the ordinary affairs of life. 80 ALR 3rd at 1123. See also Pulaski County v. Hill,97 Ark. 450 (1911).
The answer to your second question, therefore, is "yes." A person may be so mentally handicapped that they would be disqualified from being a "qualified voter" if they are an "idiot or insane person" within the meaning of Article III, 5 of the Arkansas Constitution. Unfortunately, for the time being, we are saddled with this outmoded provision and must attempt to construe and interpret it, while recognizing the fundamental right to vote of mentally handicapped persons.
Your third question asks which persons are to make determinations about the voting eligibility of the mentally handicapped. This question is not clearly defined by Arkansas law. Several provisions of law, however, affect the question.
It should be noted as an initial matter that in order to vote, a person must be able to complete the registration requirements of Amendment 51. See generally, Amendment 51, 6. It is unclear under this Amendment to what extent the potential voter may be aided by another person who could supply the necessary information. Amendment 51 also provides that the Permanent Registrar, if he or she has any reason to doubt the qualifications of an applicant for registration, may submit the application to register to the County Board of Registration, and the Board shall make a determination with respect to the qualifications of the applicant. Amendment 51, 9(d). Presumably, this is the entity authorized to make the initial determination of eligibility as to voters not yet registered. Additionally, Amendment 51 states that the Permanent Registrar shall have the duty to cancel the registration of voters "who are not lawfully qualified. . . ." Amendment 51, 11(a)(5). This official appears, therefore, to be authorized to make the initial determination with regard to previously registered voters. Additionally, upon arriving at the polls to vote, the voter must either sign his name, make his mark, or be able to state the month and day of his birth. Amendment 51, 13. Finally, a candidate has the right to challenge the vote of any person he believes to be unqualified, as do election question interest groups, under A.C.A. 7-5-312 (Cum. Supp. 1991).
None of these provisions specifically address the issue of mentally handicapped voters, and as a result are, in my opinion, inadequate to give election officials the guidance they need in administering the election laws, or to protect the fundamental rights of mentally handicapped voters. As stated in Carroll v. Cobb, 139 N.J. Super. 439, 354 A.2d 355 (1976), "[i]t should be abundantly evident that a lay person is completely unequipped to determine whether an applicant is either an `idiot' or `insane person,' as those terms are used in the Constitution and the statute, and thus disenfranchised.
Indeed, we suspect that those imprecise terms may be troublesome to experts in the fields of psychiatry or psychology." Id. At 359.
I should note, however, that the State Board of Election Commissioners is in the process of formulating rules and regulations on the topic. See generally A.C.A. 7-5-311. Additionally, it should be noted that Amendment 51, unlike other constitutional amendments, gives the General Assembly the authority to amend Amendment 51, so long as the amendments are germane to the Amendment and consistent with its policy and purpose. See Amendment 51, 19. Such an amendment would take a two-thirds vote. Clarification of these questions is therefore indicated through one of these methods.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Elana C. Wills.
Sincerely,
WINSTON BRYANT Attorney General
WB:cyh
[1] Technical requirements concerning registration, such as residence, name changes, etc., will not be addressed herein because they do not appear to be the focus of your question.
[2] The Giles court set out and discussed the three levels of mental deficiency formerly employed by the legal and medical profession as follows: "An imbecile is one of weak mind. Both imbecility and moronity are forms of mental "idiot" as meaning "a feebleminded person having a mental age not exceeding three years and requiring complete custodial care." Webster's supra at 413. Many older cases from other jurisdictions define the term "idiot," and the consensus appeared to be that the understood definition of the term implied a person who had "no understanding from his nativity" (Battle v. State, 105 Ga. 703, 32 S.E. 160
(1898)), and who is "destitute of ordinary intellectual powers." (Hiett v. Shull, 36 W.Va. 563, 15 S.E. 146 (1892)).