MARIO DE NARDO, by JOSEPH DE NARDO et al., His Next of Kin, Respondents, *v.* STEPHANIA DE NARDO, Appellant.

Argued November 27, 1944; decided December 30, 1944.

*Forrest S. Chilton* for appellant. I. The Legislature did not intend that all marriages of lunatics as so defined are *ipso facto*

voidable without regard to whether they were mentally capable of understanding, or did, in fact, understand the nature, effect and consequences of their marriages. (*Meekins* v. *Kinsella,* 152 App. Div. 32; *Weinberg* v. *Weinberg,* 255 App. Div. 366.) II. A finding that the decedent was, at the time of the marriage, mentally incapable of understanding the nature, effect and consequences of the marriage may not be implied from the finding by the jury that, at that time, he was a lunatic.

*Edgar B. Bronson, Warren C. Fielding, Alfred Sobol* and *Edward A. McInnes* for respondents. I. The verdict and finding of lunacy at the time of the marriage, imported mental incapacity to assent thereto; on this appeal without the record of the evidence and other proceedings before him, the Trial Justice's charge to the jury is not open to review and may not be considered to qualify the verdict, and even if considered, the charge would not deprive the verdict of its force as a finding of mental incapacity. (General Construction Law, § 28; *Matter of Clark,* 175 N. Y. 139; *Weinberg* v. *Weinberg,* 255 App. Div. 366; *Matter of Wells,* 177 App. Div. 100; Civ. Prac. Act, § 1137.) II. This appeal should be dismissed for lack of jurisdiction because it is not from a final judgment, but from a judgment affirming an interlocutory judgment. The judgment of Special Term was entered on May 1, 1944, and provided that it should be interlocutory only but should become final three months thereafter unless the Court should otherwise order. The judgment here sought to be appealed from, was entered July 7, 1944, upon an order dated June 16, 1944, affirming the Special Term judgment which did not become final until August 1, 1944. (*King* v. *King,* 224 N. Y. 669; Civ. Prac. Act, § 590; *Gambold* v. *MacLean,* 254 N. Y. 357; *Matter of Crandall,* 196 N. Y. 127; *Matter of Foster* v. *American Radiator Co.,* 249 App. Div. 460.) *Dean* v. *Dean,* 241 N. Y. 240, is distinguishable.

THACHER, J. We are concerned, in this case for annulment of a marriage, with the meaning of the words " lunatic " and " lunacy ". Formerly insane persons were divided into two categories: lunatics who, having been of sound mind, have lost their reason and were supposed to enjoy lucid periods, and idiots, who were without understanding from birth (1 Blackstone's Comm., 302–304). In the trial of this case the Trial Justice used

and defined " lunatic " as a person of unsound mind who is mentally deranged but may have intermittent lucid intervals. But in this lawsuit the term has a meaning defined by statute and includes every kind of unsoundness of mind except idiocy. (General Construction Law, § 28.) The term is used in that sense in section 1137 of the Civil Practice Act, which deals with the procedural phases of an action to annul a marriage on the ground that one of the parties thereto was a lunatic. Section 1136 provides for annulment in cases of idiocy. These terms are not used in section 7 of the Domestic Relations Law, which specifies those marriages which are voidable and may be annulled in actions brought as provided in the Civil Practice Act. Under this section a marriage may be annulled because either party " is incapable of consenting to a marriage for want of understanding ", and such unsoundness of mind includes both lunacy and idiocy. Without such mental incapacity at the time of the marriage there can be no annulment in such a case as this. (*Weinberg* v. *Weinberg,* 255 App. Div. 366; *Meekins* v. *Kinsella,* 152 App. Div. 32.)

The complaint alleged that at the time of the marriage and at the time of the commencement of the action plaintiffs' intestate was a lunatic, and a question framed for submission to the jury, pursuant to section 1142 of the Civil Practice Act, was phrased: " Was Mario De Nardo a lunatic at the time of his marriage to the defendant Stephania De Nardo on December 22, 1942? " After an extended trial this question was answered by the jury in the affirmative.

Thereafter the plaintiffs moved for judgment before a Justice other than the Trial Justice, and the defendant moved to set aside the verdict. Upon these motions defendant's counsel submitted a stenographic transcript of the court's charge and of all proceedings thereafter. The plaintiffs' motion for judgment upon the verdict was granted. This judgment was unanimously affirmed in the Appellate Division and appeal to this court was allowed because of confusion resulting from instructions of the court to the jury as to the meaning of the word " lunacy ".

None of the proceedings upon the trial prior to the charge are presented here and it is contended by the plaintiffs that we may not consider on this appeal the charge of the Trial Justice. We must of course consider what was before the Justice who

directed the judgment, always having in mind, however, that the record may not be sufficient to present the questions urged by the appellant. The judgment rests upon the verdict of the jury, and if the record before us discloses prejudicial error affecting the verdict, we must reverse.

The Trial Justice, having in his main charge instructed the jury that a lunatic is a person of unsound mind who is mentally deranged but may have intermittent lucid intervals, departed from the statutory definition of lunatic and failed to instruct the jury that if the plaintiffs' intestate was of sound mind at the time of his marriage he could not be regarded as a lunatic for the purpose of answering the framed question. Accordingly defendant's counsel at the close of the charge requested the further charge " that if the jury finds that Mario De Nardo had a lucid day on December 22, 1942, their answer to the question must be ' No ' " — to which the court responded: " No, I will not charge further than I have on that subject." No exception was taken. After the jury had retired, the jury returned to the courtroom and the following occurred: " The Court: I am in receipt of the following communication from the jury: ' Is the Judge's description of lunacy to be taken as the legal description of lunacy. The Judge stated in his description that even though lucid moments occur, it is still lunacy.' I have given you the legal definition of the word ' lunatic,' and I will repeat it to you now: ' A lunatic is a person of unsound mind. He is mentally deranged, but may have intermittent lucid intervals.' I will read again the only question that you twelve jurors are called upon to answer: ' Was Mario De Nardo a lunatic at the time of his marriage to the defendant, Stephania De Nardo, on December 22, 1942? ' " Defendant's counsel then requested: " Will your Honor charge the jury that the word ' lunatic ' as the Court has defined it means that Mario De Nardo on December 22, 1942, was incapable of consenting to the marriage for want of understanding, that being the phraseology used in subdivision 2 of Section 7 of the Domestic Relations Law? " " The Court: I will not charge the jury further than I have. You may retire." Defendant's counsel: " I respectfully except." The jury then retired and rendered its verdict, answering the question in the affirmative.

In view of the jury's request with reference to the Court's charge that a lunatic may have lucid intervals, the jury should

have been instructed that the question was to be answered in the negative unless they found that the plaintiffs' intestate was incapable of consenting to a marriage for want of understanding. Presumably the doubt in the minds of the jury was whether they could find the husband to have been a lunatic although he had no want of understanding at the time of his marriage. In the statutory sense the term meant unsoundness of mind, and the court's response to the jury's inquiry was inadequate and erroneous. The defendant's request to charge was pertinent to the confusion thus produced, and we think it was prejudicial error, which may have been determinative of the issue, to deny this request and to refuse to instruct the jury further.

The judgment of the Appellate Division and that of the Special Term should be reversed and a new trial granted, with costs to abide the event.

LEHMAN, Ch. J., LOUGHRAN, RIPPEY, LEWIS, CONWAY and DESMOND, JJ., concur.

Judgments reversed, etc.