385 P.2d 227

**STATE of Arizona, Appellee,**

**v.**

**Cortez OWEN, Appellant.**

**No. 1253.**

Supreme Court of Arizona.

In Division.

Sept. 19, 1963.

Rehearing Denied Nov. 12, 1963.

O. Ellis Everett, Kingman, for appellant.

Robert W. Pickrell, Atty. Gen., Stirley Newell, Asst. Atty. Gen., for appellee.

UDALL, Vice Chief Justice.

Defendant was convicted by the Superior Court of Mohave County of burglary in the first degree and urges on this appeal that the judgment is contrary to and unsupported by the evidence. The case was tried to the court without a jury and there appears to be little dispute about the facts. They may be stated briefly as follows.

In the early afternoon of September 15, 1961, the defendant and a number of companions were having car trouble on U. S. Highway 66 near Kingman, Arizona. They received permission from the service station attendants at Miller's Truck Stop to leave their car parked near the station while they attempted repairs. The night shift at the truck stop came on duty at eight P.M. and both of those attendants noticed the presence of defendant in the vicinity of the station five or six different times during the course of the evening.

Between two and two-thirty A.M. on September 16, while one of the attendants, Knautz, was taking a customary break for lunch at a small cafe across the road, the other attendant, Sumner, left the front of the station for about ten minutes to go to the rest room in another part of the building. When he returned, the cash register, containing about one hundred dollars, was missing. He summoned Knautz; they conducted a hurried search of the premises and, failing to locate the register, reported its disappearance to Mosely, the proprietor of Miller's Truck Stop. Knautz then notified the County Sheriff's office and a deputy sheriff was promptly dispatched to the scene. About one hour later, according to the testimony of Sumner and Mosely, the defendant was discovered behind a large mound of dirt, some one hundred yards distant from the station, attempting to open the cash register with a pair of pliers and a screwdriver which he had borrowed from the station after the theft had been discovered.

Under the statute the state was required to prove beyond a reasonable doubt that defendant was guilty of "entering a building * * * with intent to commit grand or petty theft, or any felony * * *." A.R.S. § 13–302 (1956). Theft is defined as "Fe-

loniously stealing, taking, carrying, leading or driving away the personal property of another." A.R.S. § 13–661 (1956). The question for decision is whether this burden was sustained; whether the court, as the trier of facts, could infer from the evidence and to the exclusion of a reasonable doubt that defendant entered the station intending to carry away the personal property of another.

We note preliminarily that the fact defendant had permission to go in and out of the station is no defense to statutory burglary if he subsequently entered with intent to steal. McCreary v. State, 25 Ariz. 1, 212 P. 336 (1923). His position, however, is that no evidence sufficient to establish such entry was introduced.

The prosecution, on the other hand, argues that its showing of defendant's exclusive possession of the cash register shortly after its disappearance is enough to support the conviction.

We recognize that possession of recently stolen goods is often considered a circumstance bearing on guilt or innocence of burglary, People v. Taylor, 25 Ill.2d 79, 182 N.E. 2d 654 (1962); Boggs v. State, 228 Md. 168, 179 A.2d 338 (1962), and that this view has likewise found expression in opinions of this court. State v. Andrade, 83 Ariz. 356, 321 P.2d 1021 (1958); Allen v. State, 26 Ariz. 317, 225 P. 332 (1924); Gibson v. State, 25 Ariz. 236, 215 P. 729 (1923); Cline v. State, 21 Ariz. 554, 192 P. 1071 (1920); Quong Yu v. Territory, 12 Ariz. 183, 100 P. 462 (1909). In those cases, however, the requisite criminal intent was established by independent evidence showing an entry accomplished by force or under other circumstances which indicated that the intruder's purpose was unlawful. In State v. Andrade, for example, there was testimony that access to the burglarized residence was gained by breaking a window. Again, in Gibson v. State, a door to the burglarized dwelling had been pried open. In Allen v. State, supra, there was, in addition to direct evidence of forcible entry, testimony that the entry occurred after the owners had vacated the house for the winter. Such circumstances justify, if they do not compel, the finding that entry was effected for the purpose of committing theft, and are reinforced by a showing that property has actually been removed. Defendant's possession, in such cases, is primarily important to establish the identity of the culprit.

In the case at bar the *corpus delicti* could only be found by first deciding, from the fact of defendant's possession, that he had stolen the property, and by reasoning further that, having stolen it, he must have entered the station where it was located with the intent to carry it away. This court has previously declared that inferences drawn

from circumstantial evidence may form the basis for a series of subsequent inferences on which the ultimate fact to be established may rest. New York Life Ins. Co. v. McNeely, 52 Ariz. 181, 79 P.2d 948 (1938). We need not determine the propriety of applying that principle to sustain a criminal conviction based on circumstantial evidence, for even the consecutive inferences permitted under McNeely must satisfy more stringent standards of reason than are met by the proof in this case.

■ No showing similar to those made in the Andrade and Allen cases, supra, of either a surreptitious or forcible entry, appear from the record here. Indeed, the scant evidence relating to the nature of the entry repudiates the notion that it was criminally motivated. Defendant had been on the grounds most of the day with the knowledge and approval of the attendants. Moreover, the station appeared to be a center of activity and remained open around the clock. Assuming that the court, in these circumstances, could find that defendant Owen had stolen the cash register, we think it could not reasonably reject the possibility that his intent to do so was formed only after a wholly innocent entry into the office.

Reversed.

STRUCKMEYER and JENNINGS, JJ., concur.