466 P.2d 380

**STATE of Arizona, Appellee,**

v.

**James Chester DUNCAN, Appellant.**

**No. 1900.**

Supreme Court of Arizona,
In Banc.
March 12, 1970.

Rehearing Denied April 14, 1970.

his night job at a steel factory early, around 7:00 P.M., so that he would not be on the street after dark. Although he went home, he became nervous and went to a local tavern and drank four or five beers. He returned home, but again became restless and went to another tavern where he drank four or five more beers. He then drove home.

The defendant parked his car on the street in front of his house shortly before midnight. He picked up his thermos and reached under the seat to get a carton of cigarettes he kept there. He also got the pistol and box of shells he had purchased earlier in the day for protection during the riots. As he started to get out of the car, he heard rocks scattering and brakes sliding on the street, and a car, with its headlights pointed at him, stopped near his car. He dropped everything he was holding except the pistol and turned around to see what was happening. He could not see anything except the lights of the car. The gun was still in his hand and was pointing at the car.

The occupants of this car were Arizona Highway Patrol officers, Officers Jenkins and Bond. They had been assigned to patrol the neighborhood in which the defendant lived. Their patrol car was a semi-marked highway patrol car. It did not have the usual "rabbit-ear" or "bubble-top" red lights or other common police car markings. Instead, it merely had a red spotlight on the driver's side and a star decal on the passenger's door.

The officers had seen the defendant stop in front of his house. They turned their patrol car around and pulled up on the driver's side of the defendant's car as he was getting out. Officer Bond got out of the patrol car on the passenger's side and, upon seeing the defendant standing there with a pistol in his hand, dropped to a crouch behind the open door. Officer Jenkins, who was driving the car, got out on his side, drew his pistol, and moved to a position just in front of the windshield partly leaning across the hood of the patrol

Gary K. Nelson, Atty. Gen., Carl Waag, Asst. Atty. Gen., Phoenix, for appellee.

Machmer, Lehman & Cantor, by Lawrence C. Cantor, Phoenix, for appellant.

LOCKWOOD, Chief Justice:

Defendant, James Chester Duncan, was convicted of assault with a deadly weapon (A.R.S. § 13–249) and sentenced to not less than one nor more than two years in the Ariziona State Prison. He appeals.

The facts are as follows: During part of July, 1967, riots erupted in parts of Phoenix. The Mayor declared an emergency and invoked a curfew. Arizona Highway Patrolmen were called in to patrol the riot-torn areas of the city.

The defendant lived in a section of Phoenix which had seen some of the worst trouble. On July 27th, the defendant left

car: He ordered the defendant to drop his gun and identified himself as a police officer. At this time, Officer Bond called for assistance on the car's radio.

Officer Jenkins testified that when he told the defendant to drop the gun the defendant replied, "You damn cops are always coming around bothering me and I am not going to drop the gun." Jenkins then told the defendant that he was under arrest and that Jenkins was going to shoot if the defendant did not drop the gun. To this Jenkins says that the defendant replied, "Go ahead and shoot."

Several other police cars arrived at the scene, bringing the number of policemen to a total of ten or twelve. These officers were armed with pistols and shotguns. They all approached the defendant and while he was standing behind the driveway gate to his yard, made a half circle in front of him with their guns trained on him. According to Officer Jenkins' testimony, the following then took place:

"A. At the last we [police officers] were standing in front of the gate, the subject [defendant] had the gun down by his side. He had it there for a few moments. Then he made a motion to raise the gun at me. I was standing directly in front of him and I dropped to the ground and fired a shot in the air from my revolver. When I did, he threw his gun and two or three patrolmen jumped over the fence and subdued him and handcuffed him."

At this time the defendant was placed in custody, and was taken to the police station. The various police officers involved testified that at no time during or following the occurrence did any of them smell the defendant's breath or give him any type of sobriety test. They did testify, however, that the defendant did not talk like a "normal man." However, Officer Jenkins testified that to him the defendant, " * * * didn't appear to be drunk * * *."

The questions defendant raises before this court are:

1. Was there sufficient evidence from which the jury could have found the defendant guilty of assault with a deadly weapon?

2. Did the defendant's evidence as to his intoxication entitle him to a directed verdict of acquittal as a matter of law because it showed that on the night in question he was unable to form the specific intent required to commit an assault?

3. Was the defendant's sentence excessive?

The first question concerns the sufficiency of the evidence to support the jury's verdict. In such a case we do not decide whether we would reach the same conclusion as the jury; rather, we decide whether there is competent evidence to support the conclusion found. State v. Green, 103 Ariz. 211, 439 P.2d 483 (1968). We will then consider the evidence in the light most favorable to sustaining the jury's verdict. State v. Rivera, 94 Ariz. 45, 381 P.2d 584 (1963).

A.R.S. § 13–249, subsec. A defines assault with a deadly weapon as follows:

"A person who commits an assault upon the person of another with a deadly weapon or instrument, or by any means or force likely to produce great bodily injury, shall be punished by imprisonment in the state prison for not less than one nor more than ten years, by a fine not exceeding five thousand dollars, or both."

We have held in State v. Gortarez, 103 Ariz. 395, 442 P.2d 842 (1968) that pointing of a loaded pistol at another constitutes an assault with a deadly weapon.

In this case the defendant admits that he had a loaded gun in his hand. He stepped out of his car and pointed his pistol at the police officers. This act, plus the totality of the surrounding circumstances, was sufficient evidence from which the jury could find the necessary mens rea to constitute the crime charged.

Defendant's second contention is that he was entitled to a directed verdict as

a matter of law because the uncontradicted evidence showed that on the night in question he was so intoxicated that he was unable to form the specific intent necessary for the commission of an assault. The record shows that he had at least eight and possibly ten beers over a period of time prior to the incidents in front of his home. The officers testified that the defendant didn't appear drunk. The weight of this evidence was a matter for the jury and we cannot say the trial court erred in refusing to grant a directed verdict on this ground.

Defendant's final contention is that the sentence he received is excessive and should be reduced by this Court under the authority granted us by A.R.S. § 13-1717, subsec. B. The sentence the defendant received was not less than one nor more than two years in the Arizona State Prison. This sentence is well within the statutory maximum and minimum. Therefore, we cannot say the trial court abused its discretion in giving this sentence. State v. Small, 105 Ariz. 363, 464 P.2d 955 (decided February 10, 1970).

Judgment affirmed.

STRUCKMEYER, V. C. J., and UDALL, McFARLAND, and HAYS, JJ., concur.