561 P.2d 311
**STATE of Arizona, Appellee,**

v.

**Robert Dean BILLHYMER, Appellant.**

**No. 3510.**

Supreme Court of Arizona,
En Banc.

Feb. 24, 1977.

Bruce E. Babbitt, Atty. Gen. by William J. Schafer, III, and Shirley H. Frondorf, Asst. Attys. Gen., Phoenix, for appellee.

John M. Neis, Pima County Public Defender by Kenneth J. Peasley, Deputy Public Defender, Tucson, for appellant.

HAYS, Justice.

Robert Billhymer, the appellant, was charged by indictment of two counts of first degree murder, one count of armed robbery and one count of grand theft. He was convicted of two counts of murder by the court on March 18, 1976, and sentenced to serve two consecutive life terms in the state prison. The two charges of armed

robbery and grand theft were dismissed with prejudice. He now appeals his conviction and sentence. We have jurisdiction pursuant to the Ariz. Const. art. 6, § 5, art. 2, § 24, and A.R.S. § 13–1711 and § 12–120.-21(A)(1).

On September 1, 1974, police officers were summoned to investigate a trailer home in Tucson. Inside the trailer police found bodies of a male and a female. Both bodies were nude and in the early stages of decomposition. Both were bound and had been stabbed repeatedly.

A neighbor told the police that he had been with the two victims and a person of appellant's description a couple of nights before and that the latter had been staying with the couple. The police were also informed that the couple's Volkswagen was missing.

The appellant was soon thereafter arrested in Ann Arbor, Michigan, for a traffic violation. He was at the time driving the victims' Volkswagen. Soon after his arrest he gave a statement to the Michigan authorities describing the Tucson murders and his complicity therein.

Following his return to Arizona, a mental examination was performed on the appellant pursuant to Rule 11, Rules of Criminal Procedure, 17 A.R.S. He was found to have above average intelligence and to have the capacity to distinguish right from wrong although suffering from a definite emotional illness. He was subsequently found competent to stand trial.

Prior to trial the defense sought by motion to interpose a defense of lunacy. An evidentiary hearing was had concerning that defense at which a psychiatrist, Dr. Gurland, was called to testify. Dr. Gurland was read the following definition of lunacy extracted from an 1828 Maryland case: *

"Lunacy is that condition or habit in which the mind is directed by the will, but is wholly or partially misguided, or erroneously governed by it; or it is the impairment of any one or more of the faculties of the mind, accompanied with

or inducing a defect in the comparing faculty."

When asked if the appellant was a lunatic according to this definition, the witness testified that, in his opinion, he was in fact a lunatic.

Pursuant to a trial agreement between the appellant and the state, the appellant waived his right to jury trial and the case was submitted to the trial court on the basis of a number of police reports, photographs and medical reports. The agreement provided that the court would first consider the lunacy defense and if that motion was denied, the court would then make its determination of guilt or innocence based solely on the record. The agreement further provided that if the appellant was found guilty, the state would recommend life sentences instead of the death penalty.

The court subsequently denied the lunacy defense, found appellant guilty of two counts of first degree murder and imposed the two life sentences.

■ The sole issue presented in this appeal is whether the trial court erred in denying the appellant's motion to raise a lunacy defense. The appellant premises his argument that the court below committed error on A.R.S. § 13–135 which reads as follows:

"All persons are capable of committing crimes except:

.    .    .    .    .

"2. Idiots, lunatics and insane persons."

Essentially, the defendant argues that although he is admittedly sane and competent to stand trial, § 13–135 guarantees him the right to interpose what he perceives as the distinct defense of lunacy.

The term "lunacy" stems from medieval days when it was believed that the influence of the full moon caused a form of insanity. Because of the intermittent character of such "moon madness" the term evolved to refer to insanity of a periodic or recurrent nature. More recently, however, the term has lost its distinctive and techni-

* *Owings Case*, 1 Bland 370 (Md.1828)

**392**

cal meaning. The testimony of Dr. Gurland showed that lunacy has not been the subject of discussion in medical publications or journals for over fifty years, and lunacy is now generally used to refer to all insane persons and persons of unsound mind. *See, e. g., DeNardo v. DeNardo,* 293 N.Y. 550, 59 N.E.2d 241 (1944), and *Oklahoma Natural Gas Corp. v. Lay,* 175 Okl. 75, 51 P.2d 580 (1935). We are of the opinion that for purposes of the question of criminal responsibility, there is no legal difference between insanity and lunacy.

Moreover, Dr. Gurland, after opining that the appellant was in fact a lunatic, went on to testify that the definition of lunacy he was read, as hereinbefore quoted, contemplates defects in the volitional capacity of the person affected and that the appellant here did experience such a volitional defect. We have on numerous occasions rejected the proposition that such a volitional incapacity, as opposed to a cognitive or perceptive incapacity, constitutes a defense to a criminal charge. *State v. Schantz,* 98 Ariz. 200, 403 P.2d 521 (1965); *State v. Macias,* 60 Ariz. 93, 131 P.2d 810 (1942). For us to adopt the appellant's proffered 150-year-old definition of lunacy would require us to reject our reasoning in those prior decisions and to permit criminal responsibility defenses based on "irresistible impulse" and other volitional defects. This we refuse to do. (*See generally* our analysis in *State v. Schantz, supra,* concerning the varying tests of insanity as it affects the criminal responsibility of those affected and our conclusions thereon).

■■ We therefore hold that there is no distinct defense of lunacy in this state differing from the defense of insanity. Since in this case the appellant was determined to be legally sane, the trial court acted properly in denying his motion to interpose a lunacy defense.

Judgment and sentence affirmed.

CAMERON, C. J., STRUCKMEYER, V. C. J., and HOLOHAN and GORDON, JJ., concur.