572 P.2d 1193
The STATE of Arizona, Appellee,

v.

Leroy DOYLE, Appellant.

No. 2 CA–CR 979.

Court of Appeals of Arizona,
Division 2.

May 18, 1977.

Rehearing Denied June 29, 1977.

Review Granted Sept. 8, 1977.

Bruce E. Babbitt, Atty. Gen. by Barbara E. Fisher, Asst. Atty. Gen., Tucson, for appellee.

John M. Neis, Pima County Public Defender by Michael P. Roca, Asst. Public Defender, Tucson, for appellant.

## OPINION

HOWARD, Chief Judge.

Appellant was found guilty by the trial court, sitting without a jury, of two counts of assault with a deadly weapon. He was sentenced to concurrent sentences of five years to five years and one day in the Arizona State Prison.

It was stipulated in the trial court that its decision would be based upon the hospital records, doctors' reports, the state's disclosure material and a letter from appellant's wife.

As far as the facts of the crime are concerned the records show that on December 23, 1973, Frank Lopez and his brother Rene Aragon went to the Valencia Market in South Tucson. Mr. Lopez properly parked his automobile in front of the market and they went inside. Appellant, apparently while attempting to park in front of the market, backed into the Lopez vehicle. He went into the market and said:

"Who's the motherfucker that hit my car. I'm going to shoot his fucking ass."

Appellant then accused Aragon of being the culprit and pulled a pistol out of his back pocket, sticking it into Aragon's ribs. He then withdrew the pistol from Aragon's ribs and pointed it back and forth between Aragon and Lopez while continuing to accuse Aragon of hitting his car. The cashier told appellant to put the pistol away, which he did. Lopez and Aragon went outside and left appellant in the store. When they saw the damage to their car they went next door to call the police. As they returned to the market they observed appellant and a female passenger depart in an automobile.

About 20 minutes later appellant's vehicle was stopped by the police as a result of the call made by Lopez and Aragon. As appellant exited from the vehicle he attempted to pull his pistol out of his pocket but was prevented from doing so by the police. The weapon was loaded and had a round in the chamber. A highly intoxicated female was in appellant's vehicle but there was no evidence which would indicate that appellant had been drinking.

Appellant has a history of mental illness. He has been diagnosed as schizophrenic, paranoid type, by the Veteran's Administration. In February of 1973 he was re-admitted to the VA Hospital because he was depressed and hearing voices. He was examined by a staff physician who found him to be competent. Appellant was discharged from the hospital 47 days later at which time he was in good contact, no longer depressed and no longer heard voices.

In February of 1974, some 47 days after the incident at the market, appellant returned to the VA Hospital in New York complaining of hearing voices. His mental status was described as:

"Patient is friendly, cooperative, neatly dressed. Vague, evasive and secretive. Admits to auditory hallucinations. No manifest delusions. No suicidal or homicidal ideas. Impaired recent memory. Properly oriented. Satisfactory information range. Judgment and insight impaired."

Although he was found to be competent, hospitalization and drug therapy were recommended.

Appellant was examined by a psychiatrist, Dr. Allan Beigel, on July 1, 1976. According to Dr. Beigel appellant displayed clearness of thought and clarity of expression. Delusional thinking was not present although there was an underlying paranoid trend to some of his thought production. The doctor further stated:

". . . His medical diagnosis is schizophrenia, chronic, undifferentiated type. At the time of the alleged offenses, it is my judgment that Mr. Doyle's capacity for judgment and impulse control were severely impaired by the presence of an acute psychiatric condition which was either a product of an exacerbation of his psychosis or acute alcoholic intoxication or a combination of both. These conditions would *seriously impair his capacity* to differentiate between right and wrong and to understand the nature and quality of his acts. . . ." (Emphasis added)

Another psychiatrist, Dr. Marshall W. Jones, examined appellant on June 18, 1976. He found that appellant did not demonstrate disorganization of thinking or display any significant signs of organic brain damage. It was his opinion that appellant suffered from schizophrenia, paranoid type, which was largely in remission at the time of the examination. It was his opinion that at the time of the incident in question appellant was in a psychotic episode that ". . . impaired his perception of reality to an extent that he could not full appreciate the nature and quality of his actions."

A psychological evaluation was conducted by the court clinic on August 24, 1976. It was the psychologist's opinion that appellant was a chronic schizophrenic who was, at the time of examination, in a state of relative remission. It was the examiner's opinion that appellant's legal difficulties stemmed directly from the behavior which ". . . is a product of mental illness."

Appellant contends that it was error not to acquit him since the state had not met its burden of proving him sane beyond a reasonable doubt. We do not agree. In order to cast the burden upon the state to prove appellant sane beyond a reasonable doubt, it was incumbent upon appellant to clearly prove that at the time of the commission of the act he " 'was labouring under such a defect of reason, from disease of the mind, as not to know the nature and quality of the act he was doing; or, if he did know it, that he did not know he was doing what was wrong.' " *State v. Schantz*, 98 Ariz. 200, 207, 403 P.2d 521, 525 (1965). This is known as the M'Naghten test.

Under the M'Naghten test *complete* impairment of cognitive capacity is necessary. LaFave and Scott, Criminal Law, p. 293. The testimony of the doctors did not rise to this level and the trial court did not err in failing to acquit.

Appellant claims that the crime of assault with a deadly weapon cannot be committed by merely pointing a deadly weapon at another person and that at the most his actions constituted a violation of A.R.S. § 13–916, exhibiting a deadly weapon other than in self defense. We do not agree. The mere pointing of a loaded pistol at another constitutes an assault with a deadly weapon. *State v. Duncan*, 105 Ariz. 426, 466 P.2d 380 (1970); *State v. Gortarez*, 103 Ariz. 395, 442 P.2d 842 (1968).

Affirmed.

HATHAWAY and RICHMOND, JJ., concur.