621 P.2d 22

**STATE of Arizona, Appellee,**

v.

**Joseph Edward VAN DYKE, Appellant.**

No. 4734.

Supreme Court of Arizona,
En Banc.

Oct. 27, 1980.

Rehearing Denied Dec. 16, 1980.

Stephen D. Neely, Pima County Atty. by Kenneth J. Peasley, Deputy County Atty., Tucson, Robert K. Corbin, Atty. Gen. by William J. Schafer, III, and Greg A. McCarthy, Asst. Attys. Gen., Phoenix, for appellee.

Redondo & Sherman, P. C. by James E. Sherman, Tucson, for appellant.

HAYS, Justice.

Appellant Joseph Edward Van Dyke, convicted of two counts of first degree murder and one count of armed burglary, was sentenced to concurrent terms of life imprisonment without possibility of parole for 25 years for each murder count and 5 to 15 years on the burglary count. Taking jurisdiction pursuant to A.R.S. § 13–4031 (Supp. 1979),[1] we affirm.

Over a period of two and one–half years, appellant and Pearl Cumbie enjoyed an on–again, off–again relationship. Appellant on occasion lived with Pearl Cumbie during the last year of their affair but the relationship was a stormy one resulting in frequent fights. During those times appellant would either stay at a room he kept or with friends. On September 13, 1978, following one such incident, appellant was staying at a friend's trailer. That evening, after consuming a considerable quantity of beer and taking a number of illicit pills purchased on the street, appellant went to the apartment he shared with Pearl and her 27–year–old son, Richard Waddell, carrying a loaded .30–.30 rifle.

In a statement made to police, appellant said he went to the apartment to scare Pearl into going out with him; however, the end result was that Pearl Cumbie and Richard Waddell were shot and killed by appellant.

I

Initially, appellant maintains that his armed burglary conviction must be reversed because, as a matter of law, one cannot commit burglary in one's own place of residence. We disagree with appellant's statement of the law.

While there is support for appellant's contention in the common law, *see* LaFave & Scott, *Handbook on Criminal Law* 708 (1972), in this state the common law is only viable insofar as it is consistent with statutes enacted in its stead. A.R.S. § 1–201.[2] Arizona's statutory crime of burglary differs greatly from the one found in the common law. *See* A.R.S. §§ 13–301 and 13–302. The elements of common law burglary traditionally included breaking and entering the dwelling of another at night with the intent to commit a felony. LaFave & Scott, *supra*. The Arizona statutory version of burglary merely requires entry into one of several designated buildings or enclosures with the intent to commit a felony and nothing more. A.R.S. §§ 13–301 and 13–302.

We have on many occasions said a breaking or otherwise unlawful entry are not elements of burglary, *State v. Pittman*, 118 Ariz. 71, 574 P.2d 1290 (1978); *State v. Calvery*, 117 Ariz. 154, 571 P.2d 300 (1977); *State v. Madrid*, 113 Ariz. 290, 552 P.2d 451 (1976); *In re Appeal in Maricopa Juvenile Action No. J–75755*, 111 Ariz. 103, 523 P.2d 1304 (1974); *State v. Owen*, 94 Ariz. 354, 385 P.2d 227 (1963); *State v. Hogue*, 15 Ariz.App. 434, 489 P.2d 281 (1971). These Arizona cases clearly establish that even where the physical entry is objectively legitimate, entry will be illegal if the defendant's subjective intent is to commit a felony. Walking into an open telephone booth,

---

1. Unless otherwise indicated, Title 13 citations in this opinion refer to the Arizona Criminal Code as it existed prior to the revisions effective October 1, 1978.

2. The new criminal code expressly abolishes all common law offenses, *see* A.R.S. § 13–103 (Supp.1979).

the office of an open service station, or an open convenience market may be objectively legitimate entries but if one makes such an entry with the intent to commit a felony, the crime of burglary is complete. *State v. Owen, supra; State v. Hogue, supra; State v. Madrid, supra.*

■ We think the jury was properly instructed on burglary and there is evidence to support the jury's verdict.

## II

Appellant next contends the failure to instruct the jury that a gun must be pointed in a threatening manner in order to constitute assault with a deadly weapon is reversible error. We disagree.

In order to establish its felony–murder theory by way of the armed burglary count, the state introduced evidence that the crime appellant intended to commit upon entry was, among others, assault with a deadly weapon. The instruction relating to assault with a deadly weapon included language that it is sufficient to merely point a deadly weapon at a victim to constitute the crime. Appellant's position is that the weapon must be pointed in a threatening manner. Our search of the authorities, including those cited by appellant, do not support his contention.

■ We note at the outset that no objection was raised at trial with respect to this instruction. As we have said before, absent fundamental error, in order to preserve an objection to a proposed instruction on appeal, counsel must object at trial and state with particularity the grounds of the objection. 17 A.R.S. Rules of Criminal Procedure, rule 21.3(c); *State v. Edgar,* 126 Ariz. 206, 613 P.2d 1262 (1980); *State v. Toney,* 113 Ariz. 404, 555 P.2d 650 (1976).

■ Moreover, Arizona authority is quite clear "[t]here is no question but what the pointing of a loaded pistol at another . . . is an assault with a deadly weapon." *State v. Gortarez,* 103 Ariz. 395, 396, 442 P.2d 842, 843 (1968). There is no requirement that the weapon must be pointed in a threatening manner. *State v. Bustamante,* 122

Ariz. 105, 593 P.2d 659 (1979); *State v. Gordon,* 120 Ariz. 172, 584 P.2d 1163 (1978); *State v. Duncan,* 105 Ariz. 426, 466 P.2d 380 (1970).

In the case at bar the relevant inquiry is not what appellant in fact did with the rifle but what he intended to do. By his own admission appellant went to the apartment to scare Pearl into going out with him. The fact he intended to do so with a loaded rifle supports the armed burglary conviction.

## III

Appellant next alleges the jury should not have been instructed concerning a stipulation that the death penalty would not be sought regardless of the verdict.

Before trial the parties stipulated that no matter what the outcome of the case, the death penalty would not be sought. It was also "STIPULATED AND AGREED by and between the parties herein that at the time of trial, the jury shall be instructed that irrespective of the verdict, the Defendant will not be subject to the death penalty."

During jury selection the panel was informed that if defendant was convicted of a crime carrying the possibility of a death sentence, none would be sought. There was no defense objection. At the close of the prosecution's case–in–chief, several stipulations were read to the jury including the death penalty stipulation. Again, there was no defense objection. While settling instructions, the state proposed an instruction which recited the death penalty stipulation and also directed the jury not to consider punishment in reaching a verdict. This time the defense objected, claiming the stipulation had already been fulfilled.

■ It is true a defendant is entitled to a jury verdict based on the evidence and without regard to the possible punishment, *State v. Burnetts,* 80 Ariz. 208, 295 P.2d 377 (1956), but here, by agreement of the parties, the jury was informed that no death sentence would be rendered. It was not only proper according to the very terms of the stipulation to "instruct" the jury but

necessary to direct that this stipulation was to play no part in its deliberations. Further, it was important to let this jury know how to deal with this particular stipulation in regard to all other stipulations.

The jury was properly instructed.

## IV

Appellant next argues he was denied a fair trial because the rule excluding witnesses from the courtroom was invoked and a witness admitted discussing his testimony with another person.

When Detective George Olsen of the Tucson Police Department took the stand the following colloquy occurred:

Q Do you recall assisting Mr. Van Dyke in any way walking down from where he was seated to another location?

A Well, I believe Mr. Sherman had asked me this in a pre–trial interview and I didn't recall helping him. I still don't recall helping him, but Detective Martin in talking to him today indicated to me I did have a hold of his arm walking him down to the car.

It is appellant's contention that when the two detectives discussed the testimony they violated the court's order precluding witnesses from communicating with each other.

Our rule excluding witnesses from the courtroom when not testifying, 17 A.R.S. Rules of Criminal Procedure, rule 9.3(a), states:

Prior to or during any proceeding the court may, and at the request of either party shall, exclude *prospective witnesses* from the courtroom and direct them not to communicate with each other until all have testified. (Emphasis added).

Since Detective Martin was neither disclosed as a possible witness at trial nor called as a witness to testify, it does not appear to us the rule was violated.

## V

In "Appellant's Supplement to Appeal," appellant maintains that he never had an initial appearance on the armed burglary charge. The allegation appears from the record to be true; however, we see no prejudice nor do we see error demanding reversal.

The purpose of an initial appearance is to get a person who has been arrested before a magistrate "without unnecessary delay," 17 A.R.S Rules of Criminal Procedure, rule 4.1(a), so that the individual can be told of the charges underlying his arrest; his rights to counsel, to remain silent, and to a preliminary hearing to determine if there exists probable cause to be bound over for trial; and to establish conditions of release. 17 A.R.S. Rules of Criminal Procedure, rule 4.2(a). Essentially the initial appearance is designed to inform the defendant of why he has been arrested, when he must next appear, and to release him if possible. Indeed, the complaint itself need not be filed until 48 hours after the initial appearance so there can be no requirement that every detail of the complaint must be revealed at the initial appearance. 17 A.R.S. Rules of Criminal Procedure, rule 4.1(b).

Here, appellant had an initial appearance which informed him of the first degree murder charges underlying his arrest. A complaint was subsequently filed containing the charges revealed at the initial appearance plus the armed burglary count. The complaint was available in sufficient time to afford appellant an opportunity to challenge each count at the preliminary hearing. We find no error.

Having reviewed the record for fundamental error and finding none, A.R.S. § 13–4035 (Supp.1979), the judgment of conviction and the sentence are affirmed.

CAMERON and GORDON, JJ., concur.

HOLOHAN, Vice Chief Justice (dissenting):

The court today holds that a man can be guilty of burglary of his own home. This novel principle comes about according to the majority opinion, because of the wording of the burglary statute. If that is what the law means, one cannot help but agree

with the often quoted remarks of Mr. Bumble, the Charles Dickens character from Oliver Twist (Chapter 51).

The majority ignores the long–standing principle that statutes should be construed to avoid an absurd conclusion or result, and the majority must admit that their construction of the burglary statute results in an absurd conclusion and result. No attempt is made by the majority to give the statute a sensible construction as an appellate court should. *See Arnold Const. Co., Inc. v. Arizona Board of Regents*, 109 Ariz. 495, 521 P.2d 1229 (1973); *Mendelsohn v. Superior Court*, 76 Ariz. 163, 261 P.2d 983 (1953).

Today's decision is in sharp contrast with our decision in *State v. Billhymer*, 114 Ariz. 390, 561 P.2d 311 (1977), in which we construed a section of the old criminal code A.R.S. § 13–135 dealing with lunacy. Although the old code stated that lunatics were incapable of committing crime, we held that there was no distinct defense of lunacy different from the usual defense of insanity. In *Billhymer, supra*, we avoided a literal construction of the statute. For reasons unknown to me, the majority feels compelled to follow a literal interpretation which results in applying the burglary statute to achieve an obviously absurd result.

STRUCKMEYER, Chief Justice (dissenting):

I concur in the dissent of Vice Chief Justice Holohan.