803 P.2d 425

**STATE of Arizona, Appellee,**

v.

**David Ortega ALTAMIRANO,
Jr., Appellant.**

**No. 1 CA-CR 89-559.**

Court of Appeals of Arizona,
Division 1, Department D.

April 12, 1990.

Review Denied Nov. 6, 1990.

Robert K. Corbin, Atty. Gen. by Jessica G. Funkhouser, Chief Counsel, Criminal Div., Randall M. Howe, Asst. Atty. Gen., Phoenix, for appellee.

Dean W. Trebesch, Maricopa County Public Defender by James L. Edgar, Phoenix, for appellant.

## OPINION

BROOKS, Presiding Judge.

Appellant David O. Altamirano (defendant) was charged with one count of sexual abuse, a class 5 felony, and one count of burglary in the second degree, a class 3 felony. The defendant entered into a plea agreement wherein count one of the complaint was dismissed and count two was reduced to attempted burglary in the second degree, a class 4 felony. Following his plea of guilty to that offense, defendant was placed on probation for four years with a requirement that he complete a counseling program. He was also ordered to serve six months in the Maricopa County jail, with the term subject to modification upon the recommendation of the adult probation officer if defendant actively participated in counseling.

## FACTS

On the day in question, defendant was at his home in Mesa with his daughter, who was then 15 years old. The defendant had been drinking. He called the child into the bedroom, where he hugged her, pulled her shirt up, unsnapped her bra, and fondled her breasts. She managed to escape to a neighbor's house, and the Mesa police were then contacted.

A complaint was filed charging defendant with one count of sexual abuse and one count of burglary in the second degree. Defendant thereafter filed a motion to dismiss count two of the complaint on the ground that, as a matter of law, he could not have been guilty of burglary because he was in his own residence at the time that the alleged sexual abuse occurred. The state opposed the motion, relying on *State v. Van Dyke*, 127 Ariz. 335, 621 P.2d 22 (1980). The trial court found *Van Dyke* dispositive and denied the motion to dismiss.

On appeal, defendant argues that there was no factual basis for the attempted burglary charge to which he pled guilty. We agree.

## APPLICABILITY OF THE BURGLARY STATUTE

■ We first note that a conviction under a guilty plea cannot be sustained unless there is a factual basis for the plea. *North Carolina v. Alford*, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970); Rule 17.3, Arizona Rules of Criminal Procedure, 17 A.R.S. If there is no such factual basis, the conviction must be reversed. *State v. Stewart*, 131 Ariz. 251, 255, 640 P.2d 182, 186 (1982); *State v. Carr*, 112 Ariz. 453, 455, 543 P.2d 441, 443 (1975).

■ Here, the defendant pled guilty to a charge of attempted burglary that arose out of conduct which occurred while he was in his own residence. This case thus raises the interesting legal issue of whether a person can burglarize his own home. The outcome in part depends upon the applicability of *State v. Van Dyke*, 127 Ariz. 335, 621 P.2d 22 (1980), to the present case.

In *Van Dyke*, defendant sometimes shared an apartment with his "on-again, off-again" girlfriend. However, he also kept a room of his own, or stayed with friends, on those frequent occasions when he and his girlfriend were having disagreements. One evening, he entered the apartment with a rifle and shot and killed his girlfriend and her son. He was convicted of armed burglary and two counts of murder.

In rejecting the defendant's argument that he could not be guilty of burglarizing his own residence, the court noted that the elements of burglary under the then existing Arizona statute differed significantly from the elements of burglary under the common law. Specifically, the court observed that the common law crime included an element of "breaking and entering" into the dwelling of another at night with an intent to commit a felony. The then existing Arizona statute, on the other hand, only required entry into one of many designated structures with the intent to commit a felony. The court noted that unlawful entry was not an element of the crime under this statute. It concluded that if one entered one of the enumerated buildings, whether lawfully or unlawfully, with felonious intent, a burglary was committed. Therefore, it found that there was evidence to support the conviction for armed burglary.[1]

In the case at hand, the defendant argues that *Van Dyke* does not apply because it was decided under prior law. The state contends that *Van Dyke* is still applicable because the current burglary statute is conceptually similar to the previous one. While we agree with the state's premise, we disagree with its conclusion.

*Van Dyke* was decided under the Arizona Criminal Code as it existed prior to the revisions effective October 1, 1978. Former A.R.S. section 13–302(A), the provision of the previous code governing the crime of burglary, provided as follows:

A person entering a building, dwelling house, office, room, apartment, tenement, shop, warehouse, store, mill, barn, stable, garage, tent, vessel, railroad car, or motor vehicle, trailer or semitrailer, a fenced or otherwise enclosed commercial yard used for storing equipment or supplies, including but not limited to scrap metals, steel or construction materials,

with intent to commit grand or petty theft, or any felony, and a person entering an outhouse or other building not enumerated in this section with intent to commit a felony, is guilty of burglary.

Former A.R.S. section 13–301(1) defined "enter" as follows:

"Enter" includes the entrance of the offender into the places enumerated in § 13–302, or an outhouse or other building not enumerated, or the insertion therein of any part of the offender's body, or of an instrument or weapon held in his hand, or used or intended to be used to threaten or intimidate the persons therein, or to detach or remove the property.

The current statute, A.R.S. section 13–1507(A), provides:

A person commits burglary in the second degree by entering or remaining unlawfully in or on a residential structure with the intent to commit any theft or any felony therein.

Under A.R.S. section 13–1501(1):

"Enter or remain unlawfully" means an act of a person who enters or remains on premises when such person's intent for so entering or remaining is not licensed, authorized or otherwise privileged.

We first note that A.R.S. section 13–1507(A) parallels former A.R.S. section 13–302(A) in ways pertinent to this case. It abrogates the common law insofar as it does not include a requirement of breaking and entering into the dwelling of another. Like the prior statute, it emphasizes the subjective intent of the person who enters or remains unlawfully in a residential or non-residential structure. *See* R. Gerber, *Criminal Law of Arizona*, at 216, 222–24 (1978). Thus, we believe that *Van Dyke* continues to be viable under section 13–1507(A), but find it inapplicable to this case.

---

**1.** Justice Holohan dissented (with Justice Struckmeyer concurring) stating:

The court today holds that a man can be guilty of burglary of his own home. This novel principle comes about, according to the majority opinion, because of the wording of the burglary statute. If that is what the law

means, one cannot help but agree with the often quoted remarks of Mr. Bumble, the Charles Dickens character from Oliver Twist (Chapter 51).

*Van Dyke*, 127 Ariz. at 338–39, 621 P.2d at 25–26.

First, the facts in *Van Dyke* were quite different from those in the instant case. While the defendant in *Van Dyke* "on occasion" lived with the victim, the apartment primarily belonged to the victim. The defendant, unlike the defendant in the present case, did not have an unlimited right to be in the dwelling. We believe that the court narrowly held in *Van Dyke* that a burglary charge can be maintained where entry is with consent and the defendant has only limited possessory rights in the property.[2] The broad proposition that a person can, without qualification, burglarize his own home is dictum in *Van Dyke* because it is not necessary to sustain the judgment. *Arizona Corp. Comm'n v. Mountain States T. & T. Co.*, 71 Ariz. 404, 412, 228 P.2d 749, 754 (1951). As such, it is not binding precedent. *Town of Chino Valley v. City of Prescott*, 131 Ariz. 78, 81, 638 P.2d 1324, 1327 (1981), *appeal dismissed*, 457 U.S. 1101, 102 S.Ct. 2897, 73 L.Ed.2d 1310 (1982), *rehearing denied*, 459 U.S. 899, 103 S.Ct. 199, 74 L.Ed.2d 160 (1982).

We believe that an independent analysis of section 13–1507(A) supports this result. It has been consistently held that:

> In statutory interpretation the primary principle is to determine and give effect to the legislative intent behind the statute. To find legislative intent, we consider the context of the statute, the language used, the subject matter, the historical background, the effects and consequences, and the spirit and purpose of the law.

*Martin v. Martin*, 156 Ariz. 452, 457, 752 P.2d 1038, 1043 (1988) (citations omitted). The question then is whether under the definition of A.R.S. section 13–1501(1) set forth above, the defendant remained in his home unlawfully (i.e., his intent for remaining there was not licensed, authorized or privileged) given his felonious purpose.

■ It is clear that although a person enters another's premises lawfully and with consent, his presence can become unauthorized, unlicensed, or unprivileged if he remains there with the intent to commit a felony. *Van Dyke*, 127 Ariz. at 336–37, 621 P.2d at 23–24; *State v. Embree*, 130 Ariz. 64, 633 P.2d 1057 (App.1981) (defendant convicted of burglary after taking property from department store during normal store hours). As stated in *Embree:*

> When a person's intent in remaining on premises is for the purpose of committing "a theft or some felony therein," such individual is no more welcome than one who initially entered with such intent.

*Id.* at 66, 633 P.2d at 1059.

In this case, however, the defendant had an absolute right to remain in his own residence at all times. He clearly had no right to commit a felony in his residence (or anywhere else). However, formation of the intent to commit the felony did not suddenly strip him of his possessory rights and make his *presence* on the premises unauthorized, unlicensed, or unprivileged.

The court will look to the historical background of a statutory enactment to shed light on its meaning and intent. *Dupnik v. MacDougall*, 136 Ariz. 39, 42, 664 P.2d 189, 192 (1983). It will also look to the policy behind the statute and to the evil that the statute was designed to remedy. *Calvert v. Farmers Ins. Co.*, 144 Ariz. 291, 294, 697 P.2d 684, 687 (1985).

The crime of common law burglary has been statutorily abrogated. *Van Dyke*, 127 Ariz. at 336, 621 P.2d at 23; A.R.S. § 13–103. However, reference to the historical background of the crime is instructive. The law of burglary was designed to protect the dweller or occupier from intruders. *See* R. Perkins, R. Boyce, *Criminal Law*, 261–63 (3d ed. 1982). The drafters of the Model Penal Code noted that while it would have been possible to eliminate burglary as a separate offense, it was kept in deference to history. *Model Penal Code and Commentaries* § 221, at 59 (1980). More importantly, the drafters made the following comment:

> [T]he maintenance of a crime of burglary reflects a considered judgment that especially severe sanctions are appropriate

---

**2.** *See* Annot., 58 A.L.R. 4th 335, § 8 (1987), which cites *Van Dyke* for that proposition.

for criminal invasion of premises under circumstances likely to terrorize occupants.

*Id.*

In *People v. Gauze*, 15 Cal.3d 709, 125 Cal.Rptr. 773, 542 P.2d 1365 (1975), the Supreme Court of California discussed at great length the question of whether a person can burglarize his own residence in light of the historical roots of the crime of burglary as affected by the applicable California Penal Code provision.[3] There, the defendant shared an apartment with another and had the right to enter the premises at all times. He entered the apartment and shot his roommate. The California statute, like the Arizona statute, eliminated the breaking and entry requirement of the common law and expanded the types of places that could be burglarized. The court, however, determined that the legislature had "preserved the concept that burglary law is designed to protect a possessory right in property, rather than broadly to preserve any place from all crime." *Id.* 125 Cal.Rptr. at 774, 542 P.2d at 1366.

> The court went on to state as follows: Applying the foregoing reasoning, we conclude that defendant cannot be guilty of burglarizing his own home. His entry into the apartment, even for a felonious purpose, invaded no possessory right of habitation; only the entry of an intruder could have done so. More importantly defendant had an absolute right to enter the apartment. This right ... was a personal right that could not be conditioned on the consent of defendant's roommates. Defendant could not be "refused admission at the threshold" of his apartment, or be "ejected from the premises after the entry was accomplished." He could not, accordingly, commit a burglary in his own home.

**3.** The California statute, Penal Code section 459, provides that "every person who enters any house, room or apartment ... with intent to commit grand or petit larceny or any felony is guilty of burglary." The historical notes to A.R.S. sections 13–301 and 13–302 indicate that those statutes were adopted from sections 459–63 of the California Penal Code. Thus, California case law would be persuasive even if the facts of this case were decided under prior law.

*Id.* at 775, 542 P.2d at 1367 (citations omitted). The court further commented as follows:

> In contrast to the usual burglary situation, no danger arises from the mere entry of a person into his own home, no matter what his intent is. He may cause a great deal of mischief once inside. But no emotional distress is suffered, no panic is engendered, and no violence necessarily erupts merely because he walks into his house. To impose sanctions for burglary would in effect punish him twice for the crime he committed while in the house.

*Id.* at 776, 542 P.2d at 1368.

The court then observed that absurd results would obtain if the burglary statute was too broadly construed. It stated:

> The statute protects against *intruders* into indoor areas, not persons committing crimes in their own homes.
>
> To hold otherwise could lead to potentially absurd results. If a person can be convicted for burglarizing his own home, he could violate section 459 by calmly entering his house with intent to forge a check. A narcotics addict could be convicted of burglary for walking into his home with intent to administer a dose of heroin to himself.... [4]
>
> In positing such hypotheticals, we indulge in no idle academic exercise. The differing consequences are significant, for the punishment for burglary is severe.

*Id.* at 777, 542 P.2d at 1369.

 If the state's interpretation of the statute is adopted in this case, the defendant would be subject to more charges because he committed an act of sexual abuse in his own home than he would be if

*See State v. Eichorn,* 143 Ariz. 609, 612, 694 P.2d 1223, 1226 (App.1984).

**4.** Legal scholars have observed that if burglary is too broadly construed, a man could be convicted of burglary if he intends to file a fraudulent tax return in his own home. *See* 2 W. LaFave & A. Scott, *Substantive Criminal Law* § 8.13, at 472 (1986).

he had committed the same act in, for example, a public wood. The court should avoid a statutory interpretation that leads to absurd results which could not have been contemplated by the legislature. *City of Phoenix v. Superior Court*, 144 Ariz. 172, 177, 696 P.2d 724, 729 (App.1985). A very broad interpretation of the statute, as suggested by *Van Dyke*, would lead to such a result. Moreover, it ignores the fundamental purpose and policy of the burglary statute.

We note that there are a number of cases from other jurisdictions which, like *Van Dyke*, have upheld convictions for burglary where the defendant had some legal or possessory interest in the residence. *See, e.g., In re Richard M*, 205 Cal.App.3d 7, 252 Cal.Rptr. 36 (1988) (juvenile living in detention facility who kept possessions at his parents' home found guilty of burglarizing home upon his escape); *Cladd v. State*, 398 So.2d 442 (Fla.1981) (estranged spouse guilty of burglarizing home of other spouse who was in sole possession of marital property); *Bradley v. State*, 244 Ind. 630, 195 N.E.2d 347 (1964) (landlord guilty of burglarizing own property by intruding on possessory rights of tenant); *State v. Schneider*, 36 Wash.App. 237, 673 P.2d 200 (1983) (wife guilty of burglarizing rental property owned jointly with husband who lived there alone); *accord, Matthews v. Commonwealth*, 709 S.W.2d 414 (Ky.1985); *State v. Herrin*, 6 Ohio App.3d 68, 453 N.E.2d 1104 (1982). However, all of the foregoing cases are distinguishable and we have been unable to find a case upholding a burglary conviction in which the defendant had an absolute and unconditional right to enter and remain on the property where he committed the crime. On this issue, we find *People v. Gauze*, 125 Cal.Rptr. 773, 542 P.2d 1365, persuasive.

For the foregoing reasons, we find that there was no factual basis for the defendant's plea of guilty to the charge of second degree burglary. We therefore reverse the conviction and sentence and remand this matter to the trial court with instructions to vacate the plea agreement and reinstate the charge of sexual abuse.

Reversed and remanded.

FIDEL and TAYLOR, JJ., concur.