538 P.2d 1154

**The STATE of Arizona,
Appellee,**

v.

**Rudolph S. CAMPOS, Appellant.**

**No. 1 CA–CR 1016.**

Court of Appeals of Arizona,
Division 1,
Department A.

Aug. 14, 1975.

Rehearing Denied Sept. 10, 1975.

Review Denied Oct. 28, 1975.

Bruce E. Babbitt, Atty. Gen. by William J. Schafer, III, Asst. Atty. Gen., Phoenix, for appellee.

Ross P. Lee, Maricopa County Public Defender by John Foreman, Deputy Public Defender, Phoenix, for appellant.

## OPINION

OGG, Presiding Judge.

This is an appeal from the conviction of the appellant-defendant Rudolph Silva Campos in two cases for the sale of a narcotic drug, and a sentence thereon of 5 years probation on each charge, to run concurrently.

The defendant urges two arguments on appeal: (1) the identification of the appellant by the state's only two witnesses was improper because it was impermissibly suggestive, thus tainting the in-court identification of the defendant by these two witnesses; and (2) the trial court erred in refusing to dismiss the case identified as Maricopa County Cause No. CR–82934 because the appropriate time limit according to Rule 8.2 of the Arizona Rules of Criminal Procedure, 17 A.R.S., had been exceeded.

## IDENTIFICATION ISSUE

The events leading to the state's two witnesses, both police officers, identifying the defendant as the perpetrator of the crime charged, were as follows: Officer Garcia of the Phoenix Police Department testified that on March 9, 1974, he purchased heroin from the defendant. He further testified that he was in the defendant's presence for approximately five minutes and, after the purchase, Officer Garcia contacted Officer Terry Blake of the Glendale Police Department, asking him if he knew a subject named Rudy who lived in Glendale. Officer Garcia was shown a photograph and immediately said "That's him." The photograph he was shown was that of the defendant. Officer Garcia, on observing the photo, identified Rudy Campos as the seller of the heroin by saying "That's the same one I bought from."

Officer Garcia placed the photograph of defendant in a notebook which he kept for purposes of identification reference. During the eight month period from the date of the purchase of the heroin to the trial date, Officer Garcia had observed the photo on at least five or six occasions. Furthermore, he had seen the defendant four times when the officer had made purchases from him, and an additional once or twice when the officer did not purchase narcotics.

On March 29, 1974, Officer Hough, also a Phoenix Police Officer, in the company of Officer Garcia, purchased heroin from the defendant; immediately after the purchase both officers went to the Glendale Police Department and gave the name "Rudy" to the Glendale narcotics officers, at which time they produced name, date of birth, records and a photograph of the defendant. The officers again identified the defendant as the man from whom they had purchased the heroin. Officer Hough testified at trial that prior to the March 29 purchase he had seen defendant on 4 or 5 occasions within a three week period.

On April 5, 1974, Officers Garcia and Hough again purchased heroin from defendant. At trial on November 26, 1974, both officers Garcia and Hough identified the defendant as the man who had sold

them heroin on March 9 and March 29, 1974.

Convictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification. *Simmons v. United States,* 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968). The test is one of the totality of the circumstances of the procedure. *Stovall v. Denno,* 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967). The circumstances surrounding the present case gave little chance that the procedure utilized led to misidentification of the defendant. The sale of heroin took place during the daytime on both March 9 and March 29; after each sale the officers involved went to the police department where they gave the name of the person who sold them the heroin. On each occasion a photograph was produced and the officers were able to identify the man in the photograph as the man who had sold them the heroin. The officers had seen this same man on other occasions and one officer carried the photograph with him and had looked at it numerous times prior to identifying the defendant at trial.

The facts of the present case are similar to those in *State v. Milonich,* 111 Ariz. 442, 532 P.2d 504 (1975), in which the Arizona Supreme Court held that the procedure used in identifying the appellant was not impermissibly suggestive. In *Milonich:*

"The sale took place November 7, 1973. The officer had previously spoken to the defendant, known to the officer then as 'Buzzi,' for about 15 minutes. At the time of the sale, the two talked about one-half hour. November 16, 1973, the officer saw the defendant and requested the police unit to stop to ascertain the defendant's true name. The officer testified that prior to trial, he had seen

Milonich approximately 15 times. At some time during December, 1973, or January, 1974, the officer went to the files of the Maricopa County Sheriff's Department to compare the name he had been given with a photo that the Department had. He determined that the photo and the name were of the same individual and he retained the picture."

At the *Milonich* trial the officer positively identified the defendant on the basis of previous personal contacts. Some of the factors that are considered in determining the probability of a misidentification are the witness's degree of attention and ability to view the criminal at the time of the crime, and the level of certainty that the witness demonstrates at the confrontation. *Neil v. Biggers,* 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972); *State v. Taylor,* 109 Ariz. 518, 514 P.2d 439 (1973). In *Milonich,* the court observed:

"[T]he witness was a trained police officer who knew when seeing the defendant that he would be later asked to identify him. He consulted the departmental record to check the name of a person that he could already identify. The facts do not support the defendant's contention that the in-court identification was tainted by the view of the photograph in the file even though the officer made later references to it. Clearly, the witness had a completely independent basis for the identification. The procedure cannot be considered impermissibly suggestive; in fact, the procedure used tended to support the validity of the identification."

In the present case we feel that the officers' previous contact with the defendant, plus the fact that on several occasions prior to trial the defendant sold heroin to the officers, makes it clear that both officers had a completely independent basis for the identification. Furthermore, after the purchases, the officers obtained the defendant's photograph at the police station —not to determine if a particular suspect

was the person who sold him the drugs, but to ascertain the name and record of a person he could already identify. We find the procedure used as not being impermissibly suggestive and therefore did not taint the in-court identification of the defendant by the two officers.

## TIME LIMIT ISSUE

The defendant was arraigned on the two Maricopa County Criminal charges as follows: In CR–82934 he was arraigned on August 23, 1974; in CR–83001 he was arraigned on August 28, 1974. Trial by jury was waived and both cases were submitted to the court on November 26, 1974. The parties agreed that the court would decide the guilt or innocence of the defendant based upon transcripts of the records of all prior hearings.

The defendant does not challenge the time period in CR–83001 in which 90 days elapsed between the date of arraignment and the trial to the court. Defendant claims the court erred in not dismissing CR–82934 under the provisions of Rule 8.-2(c), Arizona Rules of Criminal Procedure, 17 A.R.S., because 95 days elapsed between the date of arraignment and the submission of the case to the trial court. Rule 8.2(c):

"c. Defendants Released from Custody. Every person released under Rule 7 shall be tried by the court having jurisdiction of the offense within 120 days from the date of his initial appearance before a magistrate on the complaint, indictment or information, or *within 90 days from the date of his arraignment* before the trial court, whichever is the lesser." [Emphasis added].

The state contends since the defendant treated both cases as consolidated that this should be considered as a delay occasioned by and on behalf of the defendant under the provisions of Rule 8.4(a), Arizona Rules of Criminal Procedure, 17 A.R.S. The pertinent portion of this rule reads:

"The following periods shall be excluded from the computation of the time limits set forth in Rules 8.2 and 8.3: (a) Delays occasioned by or on behalf of the defendant . . ."

■ From the record it appears that as these two cases progressed, all parties, including the judge, treated them as consolidated although there is no formal order on the record. Under Rule 13.3, Arizona Rules of Criminal Procedure, 17 A.R.S., the court had the power to consolidate the two cases.[1]

We see no prejudice to the defendant in this consolidation. The legal issues and the character of the crime were the same in both cases and it was clearly to the advantage of the defendant to present his motions and make his record in a consolidated trial to the court. From the record it appears that he was relying upon his legal motions and not upon any jury determination of his guilt or innocence.

■ The defendant chose to test the state's evidence by filing motions that necessitated evidentiary hearings. He chose to join the two cases for purposes of hearings on these motions. He elected to submit both cases to the court for trial based upon the evidence from all hearings. In our opinion he is now bound by the longest time period available under CR–83001, which case complies with the 90 day limi-

---

1. Rule 13.3 Joinder
a. Offenses. Provided that each is stated in a separate count, 2 or more offenses may be joined in an indictment, information, or complaint, if they:
(1) Are of the same or similar character; or
(2) Are based on the same conduct or are otherwise connected together in their commission; or

(3) Are alleged to have been a part of a common scheme or plan.

    *  *  *  *  *

c. Consolidation. If such offenses or such defendants are charged in separate proceedings, they may be joined in whole or in part by the court or upon motion of either party, provided that the ends of justice will not be defeated thereby.

tation period of Rule 8.2(c). In effect we hold that when two or more cases are consolidated for trial the time limitations of Rule 8.2(c) shall be calculated from the case that has the longest period of time available under the provisions of the Arizona Rules of Criminal Procedure, 17 A.R.S.

We also believe that the 5 days claimed as being over the 90 day time limitation could be considered an excluded period of time under the provisions of Rule 8.4 since the consolidation was occasioned on behalf of all the parties, including the defendant.

For the reasons stated herein, the judgments and sentences appealed from are affirmed.

DONOFRIO and FROEB, JJ., concur.