686 P.2d 740

**STATE of Arizona, Appellee,**

v.

**Daniel Ray HANKINS and Paul Edward Satterfield, Appellants.**

**Nos. 5795, 5796.**

Supreme Court of Arizona,
In Banc.

June 14, 1984.

Reconsideration Denied July 17, 1984.

Robert K. Corbin, Atty. Gen., by William J. Schafer, III, Chief Counsel, Criminal Division, David R. Cole, Asst. Attys. Gen., Phoenix, for appellee.

Michael L. Vaughn, Phoenix, H. Allen Gerhardt, Jr., Tempe, Antonio R. Zuniga, Phoenix, for appellants.

GORDON, Vice Chief Justice:

On December 17, 1982, a jury found Daniel Ray Hankins and Paul Edward Satterfield guilty of first degree murder and second degree burglary. They were each sentenced to life imprisonment for the first degree murder count and to 11.25 years for the second degree burglary count. The sentences were to be served concurrently. Timely appeal was filed by both. This Court has jurisdiction pursuant to Ariz. Const. art. 6, § 5(3) and A.R.S. § 13–4031. We affirm the convictions and the sentences.

Sometime in late May, 1982, Angela Seay, Linda Foster, and the two appellants left Oregon in appellant Hankins' van to travel around the country visiting various friends and relatives. On June 1, 1982, the foursome checked in at the Kon Tiki Hotel in Phoenix. After moving their belongings from the van into their room, the two appellants left to visit someone in Chandler. Seay and Foster stayed at the Kon Tiki for several hours but eventually left, Seay armed with a handgun and Foster with a knife, to solicit acts of prostitution. At some point, the two women met John Hay and accompanied him to the apartment he shared with his sister, the murder victim, Patricia Hay. Seay left shortly after their

arrival at the apartment, telling Foster that if she (Foster) were not back at the Kon Tiki in an hour, she (Seay) and the two appellants would come get her. Foster stayed at the Hay apartment for approximately an hour and then attempted to leave. While trying to force her to stay, John Hay assaulted Foster with a knife, cutting her hand. Foster ran from the Hay apartment, returned to the Kon Tiki, left a note on the hotel room door for her friends, and made her way to the county hospital for medical attention.

At approximately the time Foster was trying to leave the Hay apartment, Seay and the two appellants were at the Kon Tiki waiting for Foster to return. They decided to go to the apartment where Seay had last seen her. They drove to the Hay apartment and arrived, unknown to them, minutes after Foster had left.

With appellant Hankins remaining in the van, Seay and appellant Satterfield approached and knocked on the apartment door. John Hay, who had been beating his sister as she lay on the couch, ran into the apartment's only bedroom. When there was no response to his knocks, appellant Satterfield kicked in the door and entered. He approached Patricia Hay's boyfriend, Thomas Howell, and accused him of having beaten Foster. Howell denied this and told appellant Satterfield that the person he wanted was in the bedroom. Appellant Satterfield entered the bedroom and, while searching for Foster, found John Hay in the closet. A fight ensued between the two men.

Meanwhile, a fight had also begun between Seay and Patricia Hay in the living room. Howell had gotten outside where he encountered appellant Hankins. Howell returned to the apartment, got Patricia Hay, and tried to leave. Seay pulled Patricia Hay back into the apartment. Still outside, appellant Hankins again confronted Howell. Within moments, Seay shot Patricia Hay and appellant Hankins struck Howell in the mouth. Howell and Patricia Hay managed to leave the apartment. Appellant Hankins went to the bedroom, inter-rupted the fight between appellant Satterfield and John Hay, and told appellant Satterfield that it was time to leave. Seay and the two appellants got into the van and left the Phoenix area. Appellants were arrested on June 11, 1982 in Clarinda, Iowa. Seay was arrested several days later in Tulsa, Oklahoma. Patricia Hay died of the gunshot wound. John Hay sustained a broken nose; Howell suffered a broken jaw.

Appellants filed separate appeals to this Court. On motion of the state, the appeals were consolidated. Each appellant raised two issues:

(1) Whether they were properly charged with first degree felony murder; and

(2) Whether their motion for a new trial was properly denied.

Appellant Hankins raised four additional issues:

(1) Whether his right to a speedy trial was violated;

(2) Whether the trial court erred by not granting a judgment of acquittal on all charges;

(3) Whether all the elements of felony murder were proven against him; and

(4) Whether his prosecution for first degree murder violated the fair notice or cruel and unusual punishment provisions of the United States or the Arizona Constitutions.

Appellant Satterfield raised two other issues:

(1) Whether certain medical testimony was properly admitted; and

(2) Whether he was denied effective assistance of counsel.

After appellant Hankins filed his brief with this Court, he filed a petition under Ariz.R.Crim.P. 32 with the superior court. The essence of that petition was ineffective assistance of counsel. After a hearing, his rule 32 petition was denied. He petitioned this Court to review that denial. Pursuant to Ariz.R.Crim.P. 31.4(b)(2), the review of the denial of the rule 32 petition was con-

solidated with his direct appeal and will be discussed herein.

## APPROPRIATENESS OF THE FELONY MURDER COUNT

Both appellants argue that, under the facts stated above, they should only have been charged with aggravated assault pursuant to A.R.S. § 13–1204(A)(3) (committing assault after entering the private home of another with the intent to commit an assault). Because aggravated assault is not one of the enumerated felonies in A.R.S. § 13–1105(A)(2), their argument continues, they should not have been charged with homicide pursuant to this state's felony murder statute. *See also State v. Essman,* 98 Ariz. 228, 235, 403 P.2d 540, 545 (1965) ("The felony-murder doctrine does not apply where the felony is an offense included in the charge of homicide. The acts of assault merge into the resultant homicide, and may not be deemed a separate and independent offense which could support a conviction for felony murder."). Appellants' premise is incorrect; they were properly charged with second degree burglary pursuant to A.R.S. § 13–1507(A) and, therefore, properly charged with felony murder.

■ A.R.S. § 13–1507(A) provides that: "A person commits burglary in the second degree by entering or remaining unlawfully in or on a residential structure with the intent to commit any theft or *any felony* therein."

(Emphasis added). Aggravated assault, depending on the type, is either a class 3 or a class 6 felony. Thus, while a felonious assault does not itself warrant a felony murder charge, remaining unlawfully in a residence with the intent to commit an assault is a burglary and the burglary warrants a felony murder charge. *State v. McGuire,* 131 Ariz. 93, 638 P.2d 1339 (1981); *see also State v. Miller,* 110 Ariz. 489, 520 P.2d 1113 (1974).

■ Appellant Satterfield claims that for the prosecution to charge second degree burglary in this case instead of aggravated assault constitutes prosecutorial misconduct, overreaching, and misuse of the charging power. He cites no authority for this novel claim. It is clearly within the sound discretion of the prosecutor to determine whether to file charges and which charges to file. *See State v. Murphy,* 113 Ariz. 416, 555 P.2d 1110 (1976); *State v. Spellman,* 104 Ariz. 438, 454 P.2d 980 (1969). We find no abuse of discretion.

## NEW TRIAL MOTION

Both appellants moved for a new trial pursuant to Ariz.R.Crim.P. 24.1 based on newly discovered evidence. The new evidence on which they based their motion was the anticipated testimony of Angela Seay. Seay was originally a co-defendant with the two appellants. During appellant Satterfield's presentation of his defense, Seay entered a plea of guilty to second degree murder and second degree burglary. Her plea agreement did not include an agreement to testify against either appellant. Both appellants called Seay to the witness stand but, claiming her privilege against self-incrimination, she refused to answer any questions. The next day, appellant Hankins' counsel informed the trial judge that Seay had informed him that she was then willing to testify. However, called before the trial judge, Seay reaffirmed her desire to exercise her constitutional right and refused to testify. After the trial concluded, Seay again expressed a willingness to testify and was allowed to do so at the hearing on the new trial motion. After testimony and argument, the motion for new trial was denied.

■ Motions to vacate a judgment or for a new trial based on newly discovered material facts must meet the standards of Ariz.R.Crim.P. 32.1(e). That rule provides that the trial court must consider:

"(1) The probability that such facts, if introduced would have changed the verdict, finding or sentence;

(2) The diligence which would have been required to discover and produce the evidence at trial; [and]

(3) The promptness with which the petitioner has commenced a proceeding after discovery of such facts[.]"

Absent a showing of an abuse of discretion, this Court will not disturb the grant or the denial of a new trial motion. *State v. Hickle*, 133 Ariz. 234, 650 P.2d 1216 (1982).

■ Appellants argue that the trial court's denial of the new trial motion was error because of the high probability that Seay's testimony would have changed the verdict. They assert that her testimony would have provided valuable evidence concerning the parties' intent when they went to the Hay apartment and concerning her own intent when she assaulted Patricia Hay. We do not believe that appellants have demonstrated an abuse of discretion by the trial court. There is nothing to indicate that the trial court abdicated its responsibility to consider the above-listed criteria. At the new trial hearing, Seay did testify regarding her intent during the time in question and regarding the actions of the two appellants, but she also admitted that she had been drinking heavily and smoking marijuana before the incident and that her recollection of the evening was less than perfect. She also acknowledged her personal relationship with appellant Hankins and that she had lied previously to police detectives investigating this matter. Given the entirety of Seay's testimony at the new trial hearing and the fact that she was a potential witness who was serving prison terms and who had nothing to lose by assisting her former co-defendants, *see State v. Irwin*, 106 Ariz. 536, 479 P.2d 421 (1971), we find no abuse of discretion in the trial court's denial of the new trial motion.

## SPEEDY TRIAL

■ Appellant Hankins asserts that he was denied his right to a speedy trial guaranteed by Ariz.R.Crim.P. 8. He makes no claim that he was denied his rights under the United States Constitution. Appellant Hankins was arraigned on July 8, 1982; therefore, pursuant to rule 8.2(b), his original "last day" was October 6, 1982. On August 17, 1982, the state's motion to consolidate appellant's trial with that of Angela Seay was granted. Her "last day" was October 26, 1982. When two or more cases are consolidated for trial, the time limits for Ariz.R.Crim.P. 8 are calculated from the case that has the longest period available. *State v. Campos*, 24 Ariz.App. 353, 538 P.2d 1154 (1975). Thus, after consolidation, appellant Hankins' "last day" was October 26, 1982. On October 21, 1982, appellant Hankins himself moved to continue the trial. His motion was granted, continuing the trial until November 9, 1982. This time was excluded, making appellant Hankins' new "last day" November 14, 1982. On November 8, 1982, one day before the trial date, appellant Hankins', then co-defendant Seay moved the court to again continue the trial. Although appellant Hankins objected to the motion, it was granted and the trial continued to December 5, 1982. The trial court then computed the new "last day" to be December 11, 1982 and ordered all counsel to recompute the time limits and advise the court of any error. No objections were filed. The period from November 9, 1982 until December 6, 1982 was properly excluded against appellant Hankins even though it was sought by one of his codefendants. *State v. Johnson*, 122 Ariz. 260, 594 P.2d 514 (1979). Since appellant Hankins' trial began on December 6, 1982 and his "last day" was December 11, 1982, there was no violation of Ariz.R.Crim.P. 8 and no deprivation of appellant Hankins' right to a speedy trial.

## DENIAL OF MOTION FOR JUDGMENT OF ACQUITTAL

■ At the close of all the evidence, the trial court granted appellants' directed verdict on the premeditation version of the first degree murder count but refused to direct a verdict on the burglary count or the felony murder theory of the first degree murder count. Appellant Hankins now argues that the verdict was directed as to premeditated murder because there was no evidence of his intent to kill or to aid a killing. Therefore, his argument con-

tinues, there necessarily can be no evidence of his intent to commit or to aid an aggravated assault, the underlying felony of the burglary count. We disagree. The felony murder doctrine does not require specific intent to kill. *State v. Jordan*, 126 Ariz. 283, 614 P.2d 825, *cert. denied*, 449 U.S. 986, 101 S.Ct. 408, 66 L.Ed.2d 251 (1980). Rather, only the mental state required for the commission of the enumerated felony must be shown. *State v. Woratzeck*, 134 Ariz. 452, 657 P.2d 865 (1982). The requisite mental state for burglary is entering or remaining unlawfully in a residence with the intent to commit any felony. A.R.S. § 13–1507. Whether appellant Hankins had the intent to commit or to aid an aggravated assault, *see* A.R.S. §§ 13–302, –1203, and –1204, is not answered by a determination of whether he had the intent to commit or to aid a killing. A directed verdict on a premeditation theory does not require a directed verdict on a felony murder theory when the underlying felony is burglary.

## PROOF OF THE ELEMENTS OF FELONY MURDER

■ Appellant Hankins asserts that an "essential element" of felony murder was not proven in this case and, therefore, that his conviction was violative of his due process guarantee. Our felony murder statute, A.R.S. § 13–1105(A)(2), provides that:

"A person commits first degree murder if * * * [a]cting either alone or with one or more other persons such person commits or attempts to commit * * * burglary * * *, and in the course of and in furtherance of such offense * * *, such person or another person causes the death of any person."

Appellant Hankins' argument is that the state did not prove that Patricia Hay's death was caused "in furtherance of" the burglary. This language was recently interpreted in *State v. Arias*, 131 Ariz. 441, 641 P.2d 1285 (1982). There, we stated that we

"disagree with the proposition that the *death* must facilitate the criminal objective. Rather, the application of the felo-

ny-murder rule found in § 13–1105(A)(2) hinges upon the resolution of the following question: did the death result from an action taken to facilitate the accomplishment of one or more of the felonies enumerated in § 13–1105(A)(2)? If the answer to this question is in the affirmative, then the felon may be found guilty of first-degree murder."

*Id.* at 443, 641 P.2d at 1287 (emphasis in original). We believe that in this case Patricia Hay's death did result from an action taken to facilitate the accomplishment of second degree burglary. Therefore, appellant Hankins' conviction was not a violation of his due process rights.

## OTHER CONSTITUTIONAL ISSUES

■ Appellant Hankins contends that the route from aiding an aggravated assault to being liable for first degree murder is so tortuous as to violate the fair notice provisions of the due process clause. The United States Supreme Court has held that "[a]ll the Due Process Clause requires is that the law give sufficient warning that men may conduct themselves so as to avoid that which is forbidden." *Rose v. Locke*, 423 U.S. 48, 50, 96 S.Ct. 243, 244, 46 L.Ed.2d 185, 188 (1975). We cannot agree with appellant Hankins that A.R.S. § 13–1105(A)(2) (incorporating burglary as an underlying offense for felony murder), A.R.S. § 13–1507 (incorporating "any felony" as an underlying offense for second degree burglary), and A.R.S. § 13–1204 (defining aggravated assault and making it a felony) are so vague that persons of common intelligence would necessarily have to guess at their meaning or differ as to their application. *See State v. Cota*, 99 Ariz. 233, 408 P.2d 23 (1965). These statutes are not void for vagueness.

■ Appellant Hankins' last contention is that his sentence of life imprisonment without possibility of parole for twenty-five years is totally disproportionate to his behavior and that it therefore violates the constitutional bar against cruel and unusual punishment. We disagree.

The United States Supreme Court has recently discussed the role of a reviewing court in evaluating a claim that a particular sentence constitutes cruel and unusual punishment. *Solem v. Helm,* 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983). Acknowledging that reviewing courts should grant substantial deference to legislative authority in setting punishment standards, the Court held that review of a sentence should be guided by "objective criteria," *id.* at ——, 103 S.Ct. at 3011, 77 L.Ed.2d at 650; *see also State v. Mulalley,* 127 Ariz. 92, 618 P.2d 586 (1980), but expressly did not require extensive analysis with regard to every appeal raising the issue.[1] In the case before us, we find that appellant Hankins was not a mere innocent bystander. He was apparently aware of the group's purpose and intent in going to the Hay apartment; he provided the transportation to get there and to immediately leave the state afterwards; he also was a participant in the incident itself. Under A.R.S. § 13–703, the penalty imposed upon him was the least onerous possible following his conviction for first degree murder. Considering, *inter alia,* the offense, the offender, and the statutory sentencing scheme of our criminal code, we do not think that appellant Hankins' sentence of life imprisonment without the possibility of parole for twenty-five years constitutes cruel and unusual punishment. *See also State v. Parker,* 113 Ariz. 560, 558 P.2d 905 (1976) (The former criminal code's twenty-five year prohibition against parole following conviction for first degree murder did not constitute cruel and unusual punishment.).

## PROSECUTORIAL MISCONDUCT

During pre-trial disclosure, the state indicated that it intended to call specific medical experts to testify regarding the nature of John Hay's injuries. These specifically named physicians were never called. Rather, during the examination of the pathologist who conducted Patricia Hay's autopsy, the state elicited testimony not only concerning Patricia Hay's death but also concerning John Hay's injuries. Appellant Satterfield claims that the non-disclosure of the extent of the pathologist's testimony constitutes prosecutorial misconduct mandating reversal.

■ We hold that appellant Satterfield waived this claim on appeal by failing to properly object at trial. *See State v. Thomas,* 130 Ariz. 432, 636 P.2d 1214 (1981). After the state asked the pathologist whether he had an opinion as to the seriousness of John Hay's injuries, all three defense counsel objected. During the subsequent sidebar conference, the following transpired:

"[Counsel for defendant Seay]:

"I merely object to the form of the question.

I do think it calls for a legal conclusion.

"[Counsel for appellant Satterfield]:

"I join in that."

None of the defense counsel objected on the ground of failure to disclose. Furthermore, appellant Satterfield has shown no prejudice as a result of the pathologist's testimony. The state did disclose that the pathologist would testify. Also, defense counsel were aware that testimony would be elicited on the subject of John Hay's injuries. All of the medical experts, including the pathologist, would have based their opinions in part on John Hay's medical records. Challenges to the medical records or to the conclusions drawn therefrom could have been made regardless of who was testifying regarding them. Indeed,

---

**1.** The Supreme Court noted:

" * * * we do not adopt or imply approval of a general rule of appellate review of sentences. Absent specific authority, it is not the role of an appellate court to substitute its judgment for that of the sentencing court as to the appropriateness of a particular sentence; rather, in applying the Eighth Amendment the appellate court decides only whether the sentence under review is within constitutional limits. In view of the substantial deference that must be accorded legislatures and sentencing courts, a reviewing court rarely will be required to engage in extended analysis to determine that a sentence is not constitutionally disproportionate."

*Solem, supra,* at ——, n. 16, 103 S.Ct. at 3009, n. 16, 77 L.Ed.2d at 649, n. 16.

the pathologist was subject to more extensive impeachment than the other medical experts might have been because he relied solely on the medical records while the other physicians had actually examined John Hay. On these facts, we find no prejudice and no prosecutorial misconduct.

## INEFFECTIVE ASSISTANCE
## OF COUNSEL

■ Appellant Satterfield points to three examples of what he maintains demonstrates that he received ineffective assistance of counsel. To support this claim, appellant Satterfield must prove, by a preponderance of the evidence, that his trial counsel failed to show at least minimal competence. *State v. Watson*, 134 Ariz. 1, 653 P.2d 351 (1982).

■ First, appellant Satterfield complains that his trial counsel failed to move for a voluntariness hearing prior to trial. However, he points to no evidence that any of his statements to police were anything but totally voluntary. Appellant Satterfield's trial counsel indicated to the trial court that he did not make voluntariness an issue because there was no evidence to sustain such an argument. Defense counsel is certainly not obligated to make frivolous arguments. Appellant Satterfield has not proven that the failure to move for a voluntariness hearing constituted ineffective assistance of counsel.

■ Second, appellant Satterfield contends that his trial counsel should not have stipulated to the introduction of a ballistic expert's opinion as to whether the bullet that killed Patricia Hay came from the handgun found in appellant Hankins' van. Rather, appellant Satterfield urges that "had [his trial counsel] refrained from [entering into the stipulation], there might have been an opportunity during cross-examination to establish that the ballistics expert was incorrect as to his opinion * *." Again, he points to no evidence that the ballistics expert could have been impeached. Thus, entering into the stipulation, especially in light of the fact that the expert was unavailable to testify at trial,

was apparently a decision of trial tactics; it has not been shown to constitute ineffective assistance of counsel.

■ Third, appellant Satterfield complains about another stipulation. Prior to the trial, all parties agreed that (1) the death penalty would not be sought by the prosecution in the event of a first degree murder conviction and (2) that the jury would be so informed prior to trial. Appellant Satterfield acknowledges, as he must, that telling the jury of the stipulation is not *per se* error. *See State v. Van Dyke*, 127 Ariz. 335, 621 P.2d 22 (1980). What he argues is that the jury should not have been informed of the stipulation until all parties had rested and the trial court was instructing the jury on the law. He asserts that telling the jury venire panel of the stipulation prior to their actual selection as jurors somehow conditioned the jury to return a guilty verdict. We do not believe this conclusion follows from the facts. Here, as in *Van Dyke*, the jury was instructed to "not consider the possible punishment" during their deliberations. Although we believe the better practice is not to mention possible sentences or, as in this case, the impossibility of a particular sentence, we hold that neither the entering into the stipulation nor the timing of its presentation to the jury has been shown to be below accepted levels of competence. We find that appellant Satterfield did receive effective assistance of counsel.

## DENIAL OF THE RULE 32 PETITION

In his rule 32 petition, appellant Hankins raised the issue of ineffective assistance of counsel. He enumerated four instances where he thought his counsel was not effective. During the pendency of the rule 32 petition, appellant Hankins abandoned two of these claims. In ruling on the remaining two claims, the trial court found one instance of error but did not find ineffective assistance of counsel. The petition for post-conviction relief was denied. We agree with the trial court's rulings on the remaining two issues and affirm the denial of the rule 32 petition.

■ Appellant Hankins' first example of alleged ineffective assistance of counsel concerns the direct examination of Angela Seay after she entered her plea agreement. As noted above, Seay invoked her fifth amendment privilege and answered no questions other than her name and address. After her invocation of the privilege, trial counsel for appellant Hankins terminated his questioning. Appellant Hankins contends that his trial counsel should have continued questioning Seay and particularly should have quoted portions of her earlier statements (arguably exculpatory as to appellant Hankins) and asked her if she had made them. Such questioning would have been improper. *See State v. McDaniel,* 136 Ariz. 188, 665 P.2d 70 (1983). To terminate questioning Seay at the point which he did does not show that trial counsel ineffectively assisted appellant Hankins' defense.

■ Appellant Hankins further argues that, in lieu of admitting Seay's prior statements through her, trial counsel could have called the police officers to whom the statements were made and admitted the statements through them. At the rule 32 petition hearing, trial counsel acknowledged that he considered such action but decided against it. He indicated several reasons for his decision including the fact that the statements were not totally exculpatory as to appellant Hankins, that Seay admitted in the statements that she loved appellant Hankins and wanted to marry him, that her statements seemed to be designed to create an alibi for appellant Hankins, and that there were a few clearly untruthful comments in the statements (*i.e.*, that neither appellant was at the scene at the time of Patricia Hay's murder). Given these circumstances, we find that trial counsel's actions were clearly tactical and strategic in nature and that they had a reasoned basis. These actions will not support an ineffectiveness claim. *State v. Watson, supra.*

Appellant Hankins' second example of alleged ineffective assistance of counsel was his trial counsel's failure to request a hearing pursuant to Ariz.R.Evid. 609 to determine the admissibility of appellant Hankins' prior convictions. Appellant Hankins insists that, but for the prior convictions, he would have testified at trial.

The state alleged four prior felony convictions: three for various theft charges and one for unlawful transportation of a firearm. Trial counsel, in testimony at the rule 32 petition hearing, acknowledged that, in his view, the firearm charge was particularly "devastating" to the defense of the current charges because part of the defense was a claim that appellant Hankins was unaware that the murder weapon was in his van during the group's travels. Thus, knowing that the state would use the prior convictions as impeachment, trial counsel advised appellant Hankins not to testify on his own behalf. Appellant Hankins now argues that trial counsel should have moved the court to determine whether the prejudicial effect of this one prior conviction outweighed its probative value and whether, pursuant to Ariz.R.Evid. 609, it should be admitted even for impeachment. Appellant Hankins further argues that trial counsel should have at least moved the court to limit the admissibility of the firearm charge by perhaps allowing impeachment with the fact of the felony but not with its nature. *See, e.g., State v. Watkins,* 133 Ariz. 1, 648 P.2d 116 (1982).

■ Trial counsel testified at the rule 32 petition hearing that, given the trial court's denial of a rule 609 motion by appellant Satterfield,[2] he thought making a motion to exclude admission of his client's prior convictions would be futile. He stated at the hearing:

"Well, needless to say, Satterfield's attorney's motion and the fact that it was denied kind of took the wind out of my sails so I talked with [appellant Hankins] about it, and I could have filed it. I told

2. The trial court denied appellant Satterfield's motion in limine to preclude use by the state of a nineteen-year-old armed robbery conviction.

him I could have, but in my opinion, since all the priors were valid priors, after my research, that it would be totally useless to do, although I would have done that. We discussed it. And we felt that it was in his best interest to press on with other investigations and other matters that seemed to be more in his favor."

In these circumstances, we do not feel that trial counsel's decision not to seek a rule 609 hearing demonstrated less than minimal professional competence. *See State v. Oppenheimer*, 138 Ariz. 120, 673 P.2d 318 (App.1983).

 However, we do find error in trial counsel's not moving the court to limit admissibility of the firearm conviction merely to the fact of conviction. Such a motion, if granted, would have precluded the "devastating" effect of having the jury told that appellant Hankins had previously been convicted of unlawful transportation of a firearm. Trial counsel admitted that making such a motion had "never crossed [his] mind." Although we acknowledge this as error, we do not find that appellant Hankins was unduly prejudiced thereby.[3] His other three admissible felonies were for crimes involving dishonesty and the state could have used them for impeachment if he had taken the witness stand. We hold that this single error does not show that appellant Hankins received inadequate assistance of counsel during his trial. We affirm the denial of appellant Hankins' rule 32 petition.

In addition to examining the issues raised by both appellants in their appeals and by appellant Hankins in his rule 32 petition, we have, pursuant to A.R.S. § 13–4035, searched the entire record for fundamental error. We have found none.

Both appellants' judgments and sentences are affirmed.

HOLOHAN, C.J., and HAYS, CAMERON and FELDMAN, JJ., concur.

---

**3.** As the United States Supreme Court recently made clear:

"An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment. * * * Accordingly, any deficiencies in counsel's performance must be prejudicial to the defense in order to constitute ineffective assistance under the Constitution."
*Strickland v. Washington,* —— U.S. ——, ——, 104 S.Ct. 2052, 2067, 80 L.Ed.2d 674, 696 (1984) A defendant must show that even unreasonable errors by defense counsel "actually had an adverse effect on the defense." *Id.*